No. 35,820

In the Matter of the Application of JAMES BURRIS, by his Next Friend, EDWARD ROONEY, *Petitioner,* v. STATE BOARD OF ADMINISTRATION OF THE STATE OF KANSAS, *Respondent.*

(134 P. 2d 649)

Opinion filed March 6, 1943.

*Edward Rooney,* of Topeka, argued the cause, and *Jacob A. Dickinson* and *Edward Rooney, Jr.,* both of Topeka, were on the briefs for the petitioner.

*Shelley Graybill,* assistant attorney general, argued the cause, and *A. B. Mitchell,* attorney general, was on the briefs for the respondent.

*Harold R. Fatzer* and *H. E. Crosswhite,* attorneys for the State Department of Social Welfare, as *amici curiae.*

The opinion of the court was delivered by

HOCH, J.: This is an original proceeding in habeas corpus. Petitioner, a minor and appearing by his next friend, avers that he is wrongfully deprived of his liberty by being incarcerated in the State Reformatory at Hutchinson. We are asked to determine whether a boy fourteen years of age, and an inmate of the Boys' Industrial School, may be lawfully sentenced to the State Reformatory upon conviction under section 21-2001, G.'S. 1935.

The facts are not in dispute. From the brief (filed with permission as *amici curiae*) of the State Department of Social Welfare, which has jurisdiction of the Boys' Industrial School, we summarize petitioner's history as follows: Petitioner was born October 1, 1928. In May, 1940, after complaint and due hearing before the juvenile court of Cowley county he was committed to the Boys' Industrial School at Topeka. On January 6, 1941, he was paroled. On May 23, 1941 he was returned to the institution for violation of the parole. Between September 11, 1941, and October 11, 1942, he escaped ten times. It is stated that on various occasions when he escaped he robbed stores or filling stations and in one instance stole a truck. However, we make no finding as to such alleged offenses and nothing said herein is predicated thereon. The board states that the superintendent of the Industrial School reports that petitioner is very shrewd, a leader, and boasted that no one could handle him. At times when he escaped several other boys accompanied him. The board further says that because he had continuously broken the rules of the institution, could not be kept on the grounds of the school and his presence was injurious to the discipline and interests of the

school, the superintendent filed a complaint in the city court of Topeka, charging him with having escaped from the institution in violation of section 21-2001, G. S. 1935. Petitioner says that he was arrested on August 20, 1942 and confined in the Shawnee county jail until October 16, 1942, when he entered a plea of guilty. He was sentenced to the reformatory but instead of being sent there was paroled back to the superintendent of the Boys' Industrial School. He again escaped, was apprehended and his parole was thereupon revoked and he was committed to the reformatory.

Section 21-2001, under which petitioner was prosecuted was en-' acted in 1901. It reads as follows:

"Any person confined in the state industrial school for boys or in the state industrial school for girls, who shall attempt to set fire to any building belonging to either of such institutions, or to any combustible matter for the purpose of setting fire to any such building, or who shall willfully and forcibly resist the lawful authority of any officer of either of such institutions, or shall incite or attempt to incite others to do so, or shall by gross or habitual misconduct exert a dangerous and pernicious influence over other persons confined in either of such institutions, or shall commit a felonious assault upon any officer, attendant, employee or inmate of either such institutions, or shall in any manner willfully burn or otherwise destroy property of the value of more than twenty dollars belonging to either of such institutions, or shall run away or escape from either of such institutions, or from the lawful authorities thereof, shall be deemed guilty of a felony, and upon conviction thereof in the district court of the county wherein such offense shall have been committed shall be punished as follows: If the person so convicted is confined in the state industrial school for boys, he shall be sentenced and committed to the Kansas state industrial reformatory for a term of not less than one year nor more than three years; and·if the person so convicted is confined in the state industrial school for girls, such person shall be sentenced and committed to the state penitentiary for a term of not less than one year nor more than three years: *Provided,* That for running away or escaping from either of such institutions the person so offending shall be deemed guilty of a violation of this act only upon the second or subsequent offense."

The heart of petitioner's contention is that under the juvenile court law (G. S. 1935, 38-401 to 38-432), no child under sixteen years of age can be regarded as a criminal; that a child under six- teen who violates a law can·only be considered as a "delinquent." Particular reliance is placed upon the provision contained in section 38-409, that "no child under the age of sixteen years shall be committed to the state reformatory," etc. From this premise it is argued that section 21-2001 must be interpreted to apply only to boys in the Boys' Industrial School at Topeka (or presumably to girls in the Industrial School for Girls at Beloit) who are *sixteen or more*

*years of age,* and that the conviction and sentencing of petitioner, a boy only fourteen years of age, for committing a "felony" was unlawful, being in violation of the juvenile court act. In further support of this view petitioner calls attention to the provision of the statutes relating to the state reformatory which provides that "any male person *between the ages of sixteen and twenty-five* who shall be convicted for the first time of any offense punishable by confinement in the state penitentiary may, in the discretion of the trial judge, be sentenced either to the state penitentiary or to the Kansas state industrial reformatory;" etc. (Italics supplied.) (G. S. 1935, 76-2306.)

For answer to petitioner's contention the respondents rely upon the following provision of the juvenile court law, found in section 38-402, which reads as follows: "This act shall apply only to children under the age of sixteen years, *not now or hereafter inmates of any state institution or any industrial school for boys or industrial school for girls or some institution incorporated under the laws of this state"* (italics supplied).

It is clear that if the unqualified provision, *supra,* of 38-402, be accepted at face value *no part* of the juvenile court act applies to children, regardless of their age, who are inmates of the institutions named. That being true, the provision of the juvenile court act (38-407, 38-409, 38-415) upon which petitioner relies has no application to his case. What escape is there from that conclusion? The statute says that *"the act"* shall not apply to children in these institutions. Can we read into the statute some qualification, reservation or limitation which is not there? And if so, what sort of qualification shall it be? How can we say that the legislature intended *some* provisions of the act to apply to children in the institutions and *other* provisions not to apply to them? And even if we could, by a robust act of construction, read a qualification into the statutory provision what guide is furnished us in the statute or elsewhere for drawing the line, for determining what parts of the juvenile court act apply to children who are inmates in the institutions and what parts do not apply to them? Counsel suggests no rule or principle for making such a classification or segregation.

If we have no basis for separating the provisions of the juvenile court act into two classes—those applicable and those not applicable to children in the institutions—what other escape is there from the conclusion that section 38-402 is controlling and determines the

issue before us? If there is any answer to that question it is an answer, implicit in petitioner's argument, to the effect that the classification established in 38-402—between children under sixteen who are inmates of the institutions and those who are not—is an arbitrary and capricious classification, having no substantial basis. And to what result would that conclusion lead? To invalidation of the entire juvenile court act? If not, why not? We do not answer the question—we merely ask it. Certainly able counsel, petitioner's next friend, whose sympathies with the progressive provisions and spirit of the juvenile court act and with the humanities generally are well known, would not be happy over such an outcome. And yet that is the direction in which part of his argument seems to point. For illustration, he calls attention to the fact that under its bare provisions section 38-402 would exclude children who are in the State Orphans' Home and who have no record of delinquency. He argues that a classification which would result in such children being treated as capable of committing a felony and of being so punishable while children reared in their own homes, with every advantage, could not be held as criminals, is a classification that is arbitrary, capricious and indefensible. But that question is not here, and it may well be left for consideration if and when such a situation arises. At most, the only classification here involved relates to the *Boys' Industrial School*—an educational institution which is *correctional* in character. Concretely, is section 21-2001, under which inmates of the Boys' Industrial School, even though under sixteen years of age, may be committed to the reformatory upon conviction of certain offenses, invalid because contrary to the juvenile court act, although section 38-402 of that act provides that the act shall not apply to such inmates? Let us briefly view the question of law involved in the realistic light of the whole situation with which the legislature had to deal, and with which we are here confronted.

This state has long been among the leaders in humanitarian approach to the problems of juvenile delinquents. Nor is this to say that there are not, perhaps, other forward steps which might well be taken. In 1879 the legislature provided for the erection of a "state reform school" building (Laws 1879, ch. 170). In 1881 was enacted the first organic act relating to this "state reform school" (Laws 1881, ch. 129). Though the name of the school was subsequently changed to "Boys' Industrial School" fundamental pro-

visions of the original act have been retained. The institution is fundamentally parental and educational in character. Boys are committed to it who are under sixteen years of age and who have committed offenses or found to be incorrigible (G. S. 1935, 76-2104, 76-2105). Boys so committed remain until they are twenty-one years old, unless sooner discharged as provided by statute (G. S. 1935, 76-2109). A similar institution for girls—Girls' Industrial School—was established in 1889. At these schools every characteristic of penal institutions is avoided as far as possible. There are no stout enclosures, no armed guards, no provisions for control by force. To set up those instrumentalities would destroy the very atmosphere and spirit with which the state seeks to surround the boys. Schooling, including occupational and trade courses, and other helpful training is provided. Most of the boys prove amenable to its care and discipline and the school is justly proud of the many fine citizens who received constructive training within its walls and on its campus.

In 1885 the legislature took another forward step in the field of penal or correctional reform. It provided for the erection of a state reform school for the incarceration of male criminal offenders between the ages of sixteen and twenty-five (Laws 1885, ch. 187). The project, however, did not reach fruition until ten years later when the State Reformatory at Hutchinson was established (Laws 1895, ch. 200). There have been amendments, and in 1901 there was a rather general revamping of the law relating to the State Reformatory (Laws 1901, ch. 355). But many fundamental provisions, including the one here involved, have remained substantially the same. The pertinent provision of the statute (G. S. 1935, 76-2306) reads:

"Any male person between the ages of sixteen and twenty-five who shall be convicted for the first time of any offense punishable by confinement in the state penitentiary may, in the discretion of the trial judge, be sentenced either to the state penitentiary or to the Kansas state industrial reformatory;" etc.

It may be noted that this statute does not provide that in no case shall offenders under sixteen years of age be confined in the reformatory. It merely provides that offenders between sixteen and twenty-five may be committed to it instead of to the penitentiary.

In 1905 another great forward step was taken in the enactment of the juvenile court law (Laws 1905, ch. 190) which established juvenile courts and otherwise provided generally for a more enlightened treatment of juvenile offenders.

No question is raised as to the regularity or legality of petitioner's original commitment. On a complaint alleging truancy, incorrigibility and larceny—or what would have been larceny if committed by a boy sixteen or more years old—he was brought before the juvenile court and in harmony with the benign provisions of the juvenile court act was treated not as a criminal but as a delinquent child. He was not sentenced for crime but was ordered committed in May, 1940 to the Boys' Industrial School. His record during the two years and more which followed has already been recited. There is no charge that the authorities of the school did not do everything they could for him. On the contrary, the record is one of persistent and patient effort on their part to change his rebellious spirit.

Here then is a boy fourteen years old who stubbornly refuses to abandon his evil ways. However charitable and humanitarian an attitude the state may yet maintain toward him what can now lawfully be done with him? Counsel contends he may not lawfully be committed to the State Reformatory. What then? Shall he again be sent back to the Boys' Industrial School? And if sent there and he continues to break the rules, to disrupt the discipline of the school and do harm to the morale of the other boys, and if he continues to escape and to commit serious offenses must such a course be tolerated until he reaches the age of sixteen? Or should walls be built, guards stationed, and the Boys' School be turned into a prison in violation of the very spirit and purpose of the institution? Or, should this boy be turned loose, unrestrained, to his own detriment and to the injury of society?

We think it was to meet this very sort of situation that section 21-2001 under which petitioner was committed, was enacted. By its terms the act applies to all boys in the Boys' Industrial School. We cannot usurp the legislative function and indulge the suggestion that the act be interpreted to apply only to boys in the Boys' Industrial School who are sixteen or more years of age. Nor has any reason been shown for invalidating the whole act. Nor, again, can we say—at least as far as the Boys' Industrial School is concerned—that the legislative classification established by section 38-402, *supra*, is arbitrary, capricious and invalid. Under that classification a boy under sixteen who has had the benefit of training at the Boys' Industrial School may, under certain circumstances, be sent to the State Reformatory. But the law says, in effect, that a boy of the same age not an inmate of the Boys' Industrial School

who commits an offense must first be given a chance to redeem himself under the helpful influence of that institution, and until it has been shown that the school cannot control him he may not be sent to the reformatory.

Possibly some better legislative solution for meeting problems like the one here presented might be devised. This court is no happier than is counsel for this boy over the thought of a fourteen-year-old boy—no matter how perverse his tendencies—being placed in an institution where older boys and adults convicted of crimes are incarcerated. But counsel points out no other recourse, under existing law, for a boy who has persistently displayed such disregard of law and rebellion against all restraint.

The writ is denied.

PARKER, J., not participating.