No. 46,821

John L. Le Vier, *Appellant*, v. State of Kansas, *Appellee*.

(520 P. 2d 1325)

Opinion filed April 6, 1974.

*F. G. Manzanares,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fontron, J.: This action is brought by the movant, John L. Le Vier, pursuant to K. S. A. 60-1507, attacking the validity of a sentence imposed against him by the Shawnee district court under the provisions of the Habitual Criminal Act, K. S. A. 21-107a.

Only one issue is presented on appeal: Is a conviction of escaping from the state industrial school for boys, in violation of G. S. 1949, 21-2001 (now K. S. A. 1973 Supp. 21-3611), a prior felony conviction within the contemplation of K. S. A. 21-107a? The trial court gave an affirmative answer to this question and Le Vier has appealed.

No facts are in dispute. In 1958 Le Vier, then less than 16 years old, pleaded guilty to an escape from the state industrial school for boys, an offense defined in G. S. 1949, 21-2001, which carried a sentence of from one to three years to the Kansas state reformatory. Le Vier next ran afoul of the law in 1960, again in Shawnee County, and entered a plea of guilty to the charge of rape, in violation of G. S. 21-424. He was sentenced on this charge to the Kansas state penitentiary for a term of not less than five nor more than twenty-one years. The third time Mr. Le Vier appeared before the Shawnee district court was in 1965 when he entered a guilty plea to assault with intent to maim, as defined in K. S. A. 21-431. The sentencing judge in the third case found that Le Vier had twice before been convicted of a felony, and sentenced him under the provisions of K. S. A. 21-107a as a three-time offender, to be confined in the penitentiary for not less than twenty years.

Le Vier contends that the offenses listed in G. S. 1949, 21-2001, and designated therein as felonies, do not fall within the class of felonies contemplated by the Habitual Criminal Act. G. S. 1949, 21-2001 reads as follows:

*"Any person confined in the state industrial school for boys* or in the state industrial school for girls, who shall attempt to set fire to any building belonging to either of such institutions, or to any combustible matter for the purpose of setting fire to any such building, or who shall willfully and forcibly resist the lawful authority of any officer of either of such institutions, or shall incite or attempt to incite others to do so, or shall by gross and habitual misconduct exert a dangerous and pernicious influence over other persons confined in either of such institutions, or shall commit a felonious assault upon any officer, attendant, employee or inmate of either of such institutions, or shall in any manner willfully burn or otherwise destroy property of the value of more than twenty dollars belonging to either of such institutions, *or shall run away or escape from either of such institutions, or from the lawful authorities thereof, shall be deemed guilty of a felony, and upon conviction thereof in the district court of the county wherein such offense shall have been committed shall be punished as follows: If the person so convicted is confined in the state industrial school for boys, he shall be sentenced and committed to the Kansas state industrial reformatory for a term of not less than one year nor more than three years*; and if the person so convicted is confined in the state industrial school for girls, such person shall be sentenced and committed to the state penitentiary for a term of not less than one year nor more than three years: *Provided, That for running away or escaping from either of such institutions the person so offending shall be deemed. guilty of a violation of this act only upon the second or subsequent offense."* (Emphasis supplied.)

Le Vier's contention that a conviction under 21-2001 is not a

conviction of felony within the meaning of the Habitual Criminal Act is based on three major premises:

1. G. S. 1949, 21-2001 through 21-2004 were not part of the general criminal laws of this state.

2. The offense of escaping from the State Industrial School for Boys does not meet the standard set by statute and case law to come within the definition of felony.

3. G. S. 1949, 21-2001, *et seq.*, were enacted under and were an extension of the *parens patriae* power of the state.

In the first place we find no suggestion that G. S. 1949, 21-2001 to 2004 were not part of the general criminal laws of this state. It is true these statutes, enacted in 1901, were not included among offenses found in early compilations of criminal laws, such as G. S. 1868, but this is surely not strange since the industrial school for boys, formerly designated the state reform school, was not established until 1881, nor the industrial school for girls until 1889. However, many criminal statutes forming part of the body of our criminal law have been enacted since early statehood. G. S. 21-2001 through 2004, since their enactment in 1901, have been carried in our statute books along with other criminal laws under the general heading of Crimes and Punishments. We find no merit in the movant's claim that 21-2001 to 2004 were not part and parcel of the general criminal law of the state.

There can be small doubt that when Le Vier entered a plea of guilty to an offense denounced by G. S. 1949, 21-2001 he was pleading guilty to a felony. The statute clearly provides that any person confined in either the state industrial school for boys or the state industrial school for girls who commits any of the acts proscribed in that statute shall be deemed guilty of a felony. Although the movant quibbles over use of the word "deemed", it is obvious the legislature intended that a violation of the statute should constitute a felony. When, by statute, certain acts are deemed to be a crime of a particular nature, they are such a crime, not a mere semblance of it. (*Commonwealth v. Pratt,* 132 Mass. 246, 247; *Commonwealth v. Brue,* 284 Pa. 294, 297, 131 A. 367, 368.)

It is a general rule of law that choosing the grade or classification to be given an offense is a function of the legislature. (22 C. J. S., Criminal Law, § 5, p. 12.) The principle is expounded in 21 Am. Jur. 2d, Criminal Law, § 20, pp. 103, 104, in this language:

"The grading of offenses has been said to be a legislative function. Accordingly, it has been held that where a statute expressly designates an offense

a felony or misdemeanor, such designation is conclusive, regardless of the punishment prescribed and even though by common-law definition, or by the definition given in a statute declaring generally what are felonies and what are misdemeanors, it would fall in the other class. In such case, the statute concerning the particular criminal act works an exception to the general definition. . . ."

The legislature saw fit to designate the violation of G. S. 21-2001 as a felony and in so doing was properly exercising its legislative prerogative.

K. S. A. 21-107a (now repealed but reincarnated in some respects in K. S. A. 1973 Supp. 21-4504) provides as follows:

"Every person convicted a second time of *felony, the punishment of which is confinement in the penitentiary,* shall be confined in the penitentiary not less than double the penalty of the second conviction; and if convicted a third time of *felony,* he shall be confined in the penitentiary for a period of not less than fifteen years. Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other competent evidence, the fact of former convictions for *felony* committed by the prisoner, in or out of this state." (Emphasis supplied.)

Mr. Le Vier argues that since a violation of 21-2001 was made punishable by commitment to the reformatory rather than to the penitentiary, his conviction of an offense proscribed by 21-2001 did not meet the criteria of a second felony "the punishment of which is confinement in the penitentiary."

Although we consider the argument fallacious, we must concede the statute was not artfully drafted. A literal construction, however, would lead to this incongruity: A conviction of violating G. S. 1949, 21-2001 could not be used to double a sentence of a second offender, or so-called two-time loser, but could be used in imposing a sentence of not less than 15 years against a third offender, or three-time loser. We cannot imply a legislative intent to reach a result so bizarre and inconsistent.

On the whole it seems to us that the sense of K. S. A. 21-107a is simply this: that every person previously convicted of felony, regardless of sentence or place of commitment, should be subjected, on proper showing, to the increased penalties called for in the Act. In *State v. Frizzell,* 137 Kan. 35, 37, 19 P. 2d 694, the former conviction relied on in imposing an increased sentence had resulted in a commitment to the reformatory, not to the penitentiary. However, we said in that case that the former conviction of felony was the controlling factor irrespective of the punishment imposed. To similar effect, see *Bush v. State,* 203 Kan. 494, 498,

454 P. 2d 429; *State v. Shepley*, 203 Kan. 635, 637, 456 P. 2d 8. We conclude that the phrase "the punishment of which is confinement in the penitentiary" was not intended to be a limiting or controlling factor. Support for this conclusion is found in the phraseology of the last sentence of 21-107a:

". . . Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other competent evidence, the fact of former convictions for *felony* committed by the prisoner, in or out of this state." (Emphasis supplied.)

It cannot seriously be questioned that the state industrial reformatory is a penal institution. It has always been treated as such by the legislature. In K. S. A. 76-24a01 the legislature defined penal institutions as "the state penitentiary, the state industrial reformatory, or any other penal institution hereafter established by the state for the confinement of male offenders." While the present statute, K. S. A. 1973 Supp. 75-5202, defines penitentiary and reformatory as "correctional" institutions, both remain essentially penal in character.

This court has likewise recognized the penal character of the reformatory. In *State, ex rel., v. Owens*, 197 Kan. 212, 221, 416 P. 2d 259, it was said:

". . . [W]e hold as a matter of law that *the state industrial reformatory at Hutchinson is a penal institution. . . .*"

Counsel for the movant argues in all seriousness that the conviction of a fifteen-year old boy for felony violates the spirit of our juvenile laws and erodes the concept of *parens patriae*. This court has never been loath to protect the rights of juveniles or to apply the doctrine of *parens patriae* but the legislature has spoken on the precise matter before us and we cannot ignore its fiat.

The Act Establishing Juvenile Courts, adopted by the legislature in 1905 and codified as G. S. 1949, 38-401, *et seq.*, expressly provided in § 38-402 that it should apply "only to children under the age of sixteen years, not now or hereafter inmates of" any industrial schools for boys and certain other institutions.

In *Burris v. Board of Administration*, 156 Kan. 600, 134 P. 2d 649, this court considered the validity of a commitment to the state industrial reformatory of a fourteen-year old boy who had been convicted of having escaped from the industrial school for boys in violation of 21-2001. The question to be answered was whether a boy of his age could lawfully be sentenced to the reformatory for a violation of 21-2001. The thrust of Burris' contention was that

under the laws relating to juveniles no child less than sixteen years of age could be regarded as a criminal and be committed to the reformatory. Hence, it was argued, 21-2001 must be interpreted as applying only to boys in the industrial school who were sixteen years or older.

In rejecting the argument advanced by *Burris,* this court said:

". . . We cannot usurp the legislative function and indulge the suggestion that the act be interpreted to apply only to boys in the Boys' Industrial School who are sixteen or more years of age. Nor has any reason been shown for invalidating the whole act. Nor, again, can we say—at least as far as the Boys' Industrial School is concerned—that the legislative classification established by section 38-402, *supra,* is arbitrary, capricious and invalid. Under that classification a boy under sixteen who has had the benefit of training at the Boys' Industrial School may, under certain circumstances, be sent to the State Reformatory. But the law says, in effect, that a boy of the same age not an inmate of the Boys' Industrial School who commits an offense must first be given a chance to redeem himself under the helpful influence of that institution, and until it has been shown that the school cannot control him he may not be sent to the reformatory." (pp. 606, 607.)

When the new Kansas Juvenile Code was adopted in 1957 (see L. 1957, ch. 256; K. S. A. 38-801, *et seq.*) it included a provision similar to G. S. 1949, 38-402. The applicable section of the 1957 Act, now codified as K. S. A. 38-806, was in force and effect in 1958 when Le Vier was sentenced for violating 21-2001. K. S. A. 38-806 reads as follows:

"(a) *Except as provided in K. S. A. 21-2001 to 21-2004,* both sections, inclusive, and K. S. A. 38-808 (b) and unless jurisdiction is by statute specifically conferred upon some other court or courts, the juvenile court of each county of this state shall have:

"(1) Exclusive original jurisdiction in proceedings concerning the person of a child living or found within the county who appears to be delinquent, miscreant, wayward, a traffic offender, a truant or dependent and neglected, as defined in K. S. A. 38-802." (Emphasis supplied.)

It appears obvious that from the time the first juvenile court legislation was enacted in 1905 to the present, the legislature has seen fit to exclude from juvenile court jurisdiction any person who, being confined either in the industrial school for boys or the industrial school for girls, has committed any of the acts prohibited in 21-2001. The rationale underlying this legislative policy would seem as valid today as when the *Burris* opinion was handed down in 1943. At any rate, it is not for this court to usurp the legislative function or to pass judgment on the wisdom of legislative acts.

We find no error in the judgment of the trial court and the same must be affirmed.