No. 47,785

STATE OF KANSAS, *Appellee*, v. JOSEPH LEE SHERK, *Appellant*.

(538 P. 2d 1399)

Opinion filed July 17, 1975.

*J. R. Russell*, of Kansas City, argued the cause, and was on the brief for the appellant.

*Albert D. Keil*, deputy district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Gene M. Olander*, district attorney, were with him on the brief for the appellee.

*John J. Ambrosio*, assistant district defender, and *Craig M. Cornish*, Legal Intern, were on the brief *amicus curiae* for the Third Judicial District Public Defender.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant was convicted of aggravated juvenile delinquency under K. S. A. 1973 Supp. 21-3611 (1) (*f*). The facts are not in dispute and were stipulated at the trial before the district court sitting without a jury. Joseph Lee Sherk, the defendant-appellant, was born in 1958. In 1973 at the age of 15 he was found to be a miscreant child by the juvenile court of Wyandotte county. He had previously been adjudicated a wayward child in 1971 and placed on probation without disposition. In 1972 he was again before the juvenile court and placed on one year's probation subject to conditions that he attend school regularly, be in after the evening meal, and be in one-half hour after any evening event that he might attend. Following the adjudication of miscreancy in March of 1973 the defendant was sentenced to commitment to the Boys Industrial School, but sentence was suspended for 60 days at the end of which period the case was to be reviewed. In May of 1973 the defendant was found to be in violation of the court's order while subject to the suspended sentence. At that time the juvenile court ordered the sentence executed and defendant was committed to the Boys Industrial School where he was admitted on June 12, 1973. On July 11, 1973, Sherk

escaped from the Boys Industrial School and was returned on July 26, 1973. He escaped a second time on December 22, 1973. He was then charged with aggravated juvenile delinquency under K. S. A. 1973 Supp. 21-3611 (1) (f) which provides as follows:

"21-3611. Aggravated juvenile delinquency. "(1) Aggravated juvenile delinquency is any of the following acts committed by any person confined in the state industrial school for boys or in the state industrial school for girls or by any delinquent child or miscreant child, as such terms are defined by K. S. A. 1971 Supp. 38-802, who is confined in any training or rehabilitation facility under the jurisdiction and control of the state department of social welfare:

"(a) Willfully burning or attempting to burn any building of any of such institutions or facilities, or setting fire to any combustible material for the purpose of burning such buildings;

"(b) Willfully burning or otherwise destroying property of the value or more than one hundred dollars ($100) belonging to the state of Kansas;

"(c) Willfully and forcibly resisting the lawful authority of any officer of any of such institutions or facilities;

"(d) Committing an aggravated assault or aggravated battery upon any officer, attendant, employee or inmate of any of such institutions or facilities;

"(e) Exerting a dangerous and pernicious influence over other persons confined in any of such institutions or facilities by gross or habitual misconduct;

"(f) Running away or escaping from any of such institutions or facilities after having previously run away or escaped therefrom one or more times.

"(2) Aggravated juvenile delinquency is a class E felony.

"(3) The juvenile court shall not have jurisdiction to try persons charged with aggravated juvenile delinquency, as defined by this section, but such persons shall be prosecuted under the general criminal laws of the state."

The defendant did not dispute the fact that he violated section (f) of 21-3611 (1) by running away or escaping from the Boys Industrial School. By way of defense he challenged the constitutionality of 21-3611 (1) (f) on a number of grounds. Counsel for defendant first raised the issue of the constitutionality of the statute in district court by a motion to dismiss. The trial court overruled the motion, holding the statute to be constitutional. At the trial of the case the district court found the defendant guilty as charged and sentenced defendant to the custody of the secretary of corrections for a term of not less than one nor more than five years for a Class E felony. The defendant has brought a timely appeal to this court.

In his statement of points the defendant claims that the statute is unconstitutional for six specific reasons. The first two reasons are somewhat overlapping. In point one the defendant declares that K. S. A. 21-3611 (1) (f) is vague and uncertain in interpretation and application. Point two states that K. S. A. 21-3611 (1) (f) is vague

and uncertain in that it does not apprise defendant Sherk of the prohibited conduct with sufficient specificity. In *State v. Conley*, 216 Kan. 66, 531 P. 2d 36, we held that the test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. When we apply this test to 21-3611 (1) (*f*) we have no hesitancy in holding that the statute is not unconstitutional by reason of being vague and indefinite. The statute in clear and express language provides in substance that running away or escaping more than once from the Boys Industrial School constitutes aggravated juvenile delinquency. Any person of common intelligence should know that the crime is committed on each occasion that an inmate of the Boys Industrial School runs away after the first time.

We further reject the defendant's contention that the statute is invalid because the superintendent of the school or the county attorney may exercise his discretion in deciding whether or not to file a prosecution under the statute. We have held on a number of occasions that the exercise of reasonable discretion in the application of a law to those of the same class does not necessarily or generally render the law unconstitutional as depriving one of equal protection of the laws. (*State v. Troy*, 215 Kan. 369, 524 P. 2d 1121; *Gladen v. State*, 196 Kan. 586, 413 P. 2d 124; *In re Skinner*, 136 Kan. 879, 18 P. 2d 154.) In *State v. Pruett*, 213 Kan. 41, 515 P. 2d 1051, we discussed in some depth the broad discretion of a prosecutor in determining whether criminal charges should be filed.

As his third point counsel for the defendant maintains that 21-3611 (1) (*f*) has no counterpart for inmates of adult correctional institutions and therefore the equal protection clause of the constitution is violated. K. S. A. 21-3809 and 21-3810 make it a criminal offense for persons charged or committed under the criminal code to escape while in lawful custody. We find no denial of equal protection of the laws in this respect.

The defendant next complains that 21-3611 (1) (*f*) is utilized by the state of Kansas as "parental punishment" for conduct of children who are made "wards" of the state by the Kansas juvenile judges.

He argues that the state cannot use criminal prosecution to enforce its parental duties toward such a ward. As we understand it, defendant's position is in substance that the conviction of a 15-year-old boy for a felony violates the spirit of our juvenile laws and erodes the concept of *parens patriae*. The same argument was made and rejected in *Le Vier v. State*, 214 Kan. 287, 291, 520 P. 2d 1325.

The defendant's fifth point raises again a claim that 21-3611 (1) (*f*) is unconstitutional as a denial of equal protection of the laws. This point is vigorously urged by the Third Judicial District Public Defender who filed an *amicus curiae* brief with the permission of the court. In support of its position the public defender combines a due process argument with an equal protection argument and reasons as follows: The law draws the line of criminal responsibility in the first instance at the age of 18. Young people under the age of 18 are classified as juveniles and ordinarily are not to be treated as criminals but rather as delinquents. The philosophy of the juvenile code is to protect and rehabilitate juveniles rather than to punish them criminally. Under K. S. A. 38-808 (*b*) juveniles who are 16 years of age or older at the time of the commission of the offense may be prosecuted as criminals provided the juvenile court waives its jurisdiction by finding on the basis of substantial evidence that the child would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court, and that the child is not a fit and proper subject to be dealt with under the Kansas juvenile code. If such a finding is made the juvenile court shall direct the prosecuting attorney to prosecute the person under the applicable criminal statute or ordinance. Before the juvenile court can waive its jurisdiction, the juvenile must be afforded an amenability hearing which complies with the minimum requirements of due process of law. (*Kent v. United States*, 383 U. S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045; *In re Templeton*, 202 Kan. 89, 447 P. 2d 158; *State, ex rel., v. Owens*, 197 Kan. 212, 416 P. 2d 259; *In re Patterson, Payne and Dyer*, 210 Kan. 245, 499 P. 2d 1131; and *In re Stephenson and Hudson*, 204 Kan. 80, 460 P. 2d 442.)

It is contended that K. S. A. 21-3611 violates the requirement of equal protection of the laws because it unlawfully places juveniles into two distinct and separate categories: Juveniles who are entitled as a matter of right to an amenability hearing as provided in 38-808 (*b*); and juveniles who have escaped from the Boys In-

dustrial School in violation of 21-3611 (1) (*f*) who are not afforded an amenability hearing. In substance the argument is that there is no rational basis for the classification and that this distinction made between different classes of juveniles constitutes an invidious discrimination. In further support of his position counsel for the defendant maintains that juveniles who violate 21-3611 (*f*) are not afforded a due process hearing to determine whether or not they are amenable to the programs available in the juvenile court and whether or not they are fit and proper persons to be dealt with under the Kansas juvenile code. It is argued that the right to be treated as a juvenile and to be entitled to "care, treatment, and training programs" of the juvenile court are valuable rights which cannot summarily be taken away without a due process hearing. The defendant does not question the power of the legislature to abolish the juvenile courts and treat all juveniles as adults when laws of our society have been violated by them. Nor does he question the power of the state to try a juvenile as an adult once it has been determined that the individual juvenile is not amenable to juvenile rehabilitation. Defendant, however, does challenge the power of the legislature, once it has given exclusive jurisdiction to the juvenile courts to protect the welfare of the child and provide measures of guidance and rehabilitation for the child to deprive him of those protections by way of a statutory irrebuttable presumption which has the effect of holding the child criminally responsible without the child being provided a due process hearing to determine his amenability to juvenile court supervision.

A determination of this issue requires us to examine the statutory classification to determine whether or not it has a rational basis. In *Henry v. Bauder*, 213 Kan. 751, 518 P. 2d 362, we declared that under the federal and Kansas equal protection constitutional provisions, a state statute may single out a class of persons for distinctive treatment only if the classification bears a rational relation to the purpose of the legislation. We further stated that the constitutional principle of equal protection does not preclude the state from drawing distinctions between different groups of individuals, but does require that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. In this regard see also *Pinkerton v. Schwiethale*, 208 Kan. 596, 493 P. 2d 200. Our problem is essentially to determine the rationality of the classification which distinguishes between juveniles who

are entitled to an amenability hearing before they can be charged with crime and juveniles who are escapees from the Boys Industrial School and other training and rehabilitation facilities under the jurisdiction and control of the state department of social welfare. In short, is the statutory classification reasonable or is it arbitrary and unreasonable? We have concluded that the classification created by 21-3611 (1) (*f*) has a rational basis and therefore must be upheld as a reasonable classification.

The basic issue raised here was also before the court in *Burris v. Board of Administration,* 156 Kan. 600, 134 P. 2d 649. There we held that the juvenile court act (G. S. 1935, 38-401 to 38-432) was not applicable to inmates of the Boys Industrial School and that inmates of that institution could be prosecuted under G. S. 1935, 21-2001 (the forerunner of K. S. A. 21-3611) and that upon conviction in district court could be committed to the state reformatory. The juvenile court act at that time did not provide for a waiver of juvenile court jurisdiction by an amenability hearing as is now provided by K. S. A. 38-808 (*b*). The issue raised, however, clearly involved the reasonableness of the classification contained in the statute which imposed criminal liability upon escapees from the Boys Industrial School. In *Burris* this court stated that the state of Kansas was among the leaders in a humanitarian approach to the problems of juvenile delinquents. We pointed out that the Boys Industrial School, which had formerly been called the State Reform School, is fundamentally parental and educational in character. Every characteristic of penal institutions is avoided as far as possible. There are no stout enclosures, no armed guards, no provisions for control by force. To set up those instrumentalities would destroy the very atmosphere and spirit with which the state seeks to surround the boys. The court observed that most of the boys prove amenable to its care and discipline but that some boys prove incorrigible. In regard to the petitioner Burris the court stated:

"Here then is a boy fourteen years old who stubbornly refuses to abandon his evil ways. However charitable and humanitarian an attitude the state may yet maintain toward him what can now lawfully be done with him? Counsel contends he may not lawfully be committed to the State Reformatory. What then? Shall he again be sent back to the Boys' Industrial School? And if sent there and he continues to break the rules, to disrupt the discipline of the school and do harm to the morale of the other boys, and if he continues to escape and to commit serious offenses must such a course be tolerated until he reaches the age of sixteen? Or should walls be

built, guards stationed, and the Boys' School be turned into a prison in violation of the very spirit and purpose of the institution? Or, should this boy be turned loose, unrestrained, to his own detriment and to the injury of society?

"We think it was to meet this very sort of situation that section 21-2001 under which petitioner was committed, was enacted. . . . Nor, . . . can we say—at least as far as the Boys' Industrial School is concerned—that the legislative classification established by section 38-402 . . . is arbitrary, capricious and invalid. . . .

"Possibly some better legislative solution for meeting problems like the one here presented might be devised. This court is no happier than is counsel for this boy over the thought of a fourteen-year-old boy—no matter how perverse his tendencies—being placed in an institution where older boys and adults convicted of crimes are incarcerated. But counsel points out no other recourse, under existing law, for a boy who has persistently displayed such disregard of law and rebellion against all restraint." (pp. 606, 607.)

The rationale of *Burris* is just as sound today as it was in 1943. K. S. A. 21-3611 (1) (*f*) or its forerunners providing for the prosecution and punishment of inmates running away or escaping from the Boys' Industrial School has been a part of the criminal laws of this state since such legislation was initially enacted in 1901, (Laws of Kansas, 1901, chapter 172.) As pointed out by the Judicial Council in 1968, K. S. A. 21-3611 is helpful in dealing with exceptional cases not amenable to the processes and controls employed in the juvenile courts. Where an inmate escapes two or more times from the Boys Industrial School it seems to us a reasonable presumption that he is no longer amenable to juvenile rehabilitative supervision and treatment. At that point the legislature could reasonably conclude that such an escapee was at the end of the road as a juvenile and could properly be charged and tried in the criminal courts for aggravated juvenile delinquency. It does not follow as a matter of law that on conviction of aggravated juvenile delinquency the young defendant will be forthwith incarcerated in the Kansas State Industrial Reformatory. The district court has a broad discretion to place the defendant on probation or to utilize other rehabilititative facilities available in the adult criminal justice system.

Counsel for the defendant has expressed concern that following a conviction of aggravated juvenile delinquency the young defendant will forevermore be handicapped by a felony record which will deny to him the opportunities for success in this society. This is not necessarily so, for the legislature by K. S. A. 21-4616 has provided for the annulment of convictions to relieve youthful

offenders from the social and economic stigma resulting from criminal convictions and to offer them an added incentive to conform to social norms and to participate in our society without the added burden of a criminal conviction. In *State v. Miller*, 214 Kan. 538, 520 P. 2d 1248, we held that annulment of conviction should be granted under 21-4616 unless the court finds some strong affirmative cause to deny it as where the evidence shows that the defendant has some marked propensity towards continuing criminal conduct or that he remains a clear and present danger to the public. We have concluded that K. S. A. 21-3611 providing for the crime of aggravated juvenile delinquency is a reasonable exercise of the legislative power and that juveniles who have been confined in the designated state juvenile institutions may be classified and treated differently than other juvenile offenders. As we stated in *Le Vier v. State,* supra, it is not for this court to usurp the legislative function or to pass judgment on the wisdom of legislative acts.

Counsel for the *amicus curiae* has raised other points, claiming in substance that 21-3611 (1) (*f*) denies juveniles due process of law because it fails to provide an opportunity for hearing when liberty and property of the juveniles are denied; that the statute creates an impermissible, irrebuttable presumption that any juvenile who escapes more than once from a juvenile treatment facility is no longer amenable to juvenile rehabilitation; and finally that 21-3611 (1) (*f*) is an arbitrary exercise of the state police power in that the means applied are not rationally calculated to fulfill the legislative ends or purposes. We have considered these contentions and find them to be without merit. Where a person is charged with aggravated juvenile delinquency under K. S. A. 21-3611 he must be formally charged and tried in the criminal courts where he is entitled to all procedural due process required in any criminal prosecution. There his guilt or innocence is determined. Furthermore the waiver of juvenile court jurisdiction by providing an amenability hearing is not involved at all in these cases since the jurisdiction of the juvenile court is specifically excluded by section (3) of 21-3611.

Finally we note the contention of the defendant that K. S. A. 21-3611 (*f*) provides for cruel and unusual punishment in that there is no proportional relationship between the alleged "harm" done by running away and the felony punishment that is meted out for such actions. We cannot say that a sentence of one to

five years in the Kansas State Industrial Reformatory constitutes cruel and unusual punishment as contemplated by the Eighth Amendment to the Constitution of the United States or Section IX of the Bill of Rights of the Kansas Constitution. The defendant has not cited any case authority in support of his position and we therefore reject the contention as being without merit.

For the reasons set forth above we have concluded that K. S. A. 21-3611 (1) (*f*) is not unconstitutional as depriving the defendant of equal protection of the laws or due process of law as required by the Fourteenth Amendment to the Constitution of the United States or Section I of the Bill of Rights of the Constitution of the State of Kansas. Furthermore we hold that the statute does not provide for cruel or unusual punishment as proscribed by the Eighth Amendment to the Constitution of the United States or Section IX of the Bill of Rights of the Constitution of the State of Kansas.

The judgment of the district court is affirmed.

FROMME, J., not participating.