No. 48,186

STATE OF KANSAS, *Appellee,* v. MICHAEL YOUNG, *Appellant.*

(552 P. 2d 905)

Opinion filed July 23, 1976.

*M. Warren McCamish,* of Maurin, McCamish and Vader, of Kansas City, argued the cause, and was on the brief for the appellant.

*Philip L. Sieve,* chief assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a criminal action by sixteen-year-old Michael W. Young, (defendant-appellant) from a jury verdict which found him guilty of murder in the first degree (K. S. A. 21-3401) while perpetrating or attempting to perpetrate the felony of aggravated robbery. (K. S. A. 21-3427.)

At issue is the jurisdiction of a district court over a previously adjudicated juvenile, a juvenile's right to counsel and adult advice and the admissibility of a confession when the juvenile was alleged to be under the influence of drugs.

Michael Young was born December 22, 1957. On September 4, 1974, Michael Young was found to be a delinquent child not amenable to the care, treatment and training program available through the facilities of the juvenile court. (See, K. S. A. 38-808 [Weeks], now K. S. A. 1975 Supp. 38-808.)

The state's information filed December 13, 1974, alleged that on October 28, 1974, Michael Young and two Negro male companions killed Robert Young during the perpetration or attempted perpetration of an aggravated robbery. (K. S. A. 21-3427.) The record does not disclose many facts concerning the robbery and murder. Suffice it to say the police arrested one Rufus Bolden (a/k/a Six-Fingered Looney) who named Michael as a participant in the crime.

At about 7:30 p. m. on November 20, 1974, the police arrested Michael, then sixteen. Michael testified he asked to call his attorney and his father, but his request was denied. (Testimony on this point will be stated in detail later in the opinion.)

At about 8:15 p. m., the police read a waiver of rights form containing the *Miranda* warnings. (*Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Michael then read the form himself and signed his name on the form. Two police detectives testified Michael indicated that he understood the contents of the waiver of rights document and that he was acting voluntarily

without threats or coercion. At trial Michael testified the form was read to him; he was asked if he understood; he told the detectives he understood; *and believed that he did understand.*

The police detectives described Michael as a little apprehensive and evasive at first. However, when the police said Rufus Bolden had implicated him in the robbery-murder, Michael decided to confess and tell the police how the robbery-murder had occurred. A written statement taken by the police was read, corrected and signed by Michael at 9:17 p. m. The statement described Michael's role in the robbery, how he hit one person on the head with a hammer, and where the murder weapon could be found. Michael's statement indicated the murder weapon, a pistol, was at 6th and "Hiawatha", which Michael changed to "Hallock" and initialed "M. W. Y." The police went to the Hallock address Michael gave them and found the murder weapon.

Michael testified at the time of his arrest and interrogation he was under the influence of marihuana, reds and quaaludes. The police admitted Michael told them this, but they did not think he was under the influence of the drugs.

The trial court admitted the confession finding Michael was fully competent, understood what he was doing, and made the statement.

At the trial on March 13, 1975, the jury found Michael guilty of murder in the first degree. Appeal has been duly perfected.

The appellant contends the district court lacked jurisdiction over him because the record does not show the exclusive original jurisdiction of the juvenile court was properly waived.

The juvenile code waives jurisdiction in two specific areas. K. S. A. 1975 Supp. 38-806, applicable here, provides in part:

"(*a*) Except as provided in K. S. A. 21-3611 and K. S. A. 1975 Supp. 38-808 (*b*) and unless jurisdiction is by statute specifically conferred upon some other court or courts, the juvenile court of each county of this state shall have:

"(1) Exclusive original jurisdiction in proceedings concerning the person of a child living or found within the county who appears to be delinquent, miscreant, wayward, a traffic offender, a truant or dependent and neglected, as defined in K. S. A. 1975 Supp. 38-802."

K. S. A. 21-3611 deals with aggravated juvenile delinquency. It provides punishment under this state's general criminal laws for certain acts committed by any person confined in the state juvenile institutions. This court has recently construed this statute to be constitutional against due process and equal protection attacks. (*State v. Sherk,* 217 Kan. 726, 538 P. 2d 1399.) (See also, *Le Vier*

*v. State,* 214 Kan. 287, 520 P. 2d 1325; *Seibert v. Ferguson,* 167 Kan. 128, 205 P. 2d 484; and *Burris v. Board of Administration,* 156 Kan. 600, 134 P. 2d 649.)

The juvenile code also waives jurisdiction by the statutory language of K. S. A. 38-808 (*b*) (Weeks). The part material to our decision reads:

". . . Any finding by a juvenile court hereunder, that a child would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, may, if the order so provides, thereafter attach to any future act by such child which is cognizable under the juvenile code as an act of delinquency or miscreancy, and jurisdiction over such child shall be vested in any court of appropriate jurisdiction of the county of such child's residence or of the county wherein he may be found." (Now K. S. A. 1975 Supp. 38-808 [*c*].)

Here the appellant was found to be a delinquent child not amenable to the care, treatment and training program available through the facilities of the juvenile court on September 4, 1974, prior to the offense with which he is here charged. The journal entry disclosing the jurisdiction of the juvenile court was waived for future acts provides:

"It is the Further Judgment and Order of the Court that pursuant to K. S. A. 38-808 (b) that this certification Order stating that said minor is not amenable to the care, treatment and training program available through the facilities of the Juvenile Court Should and Does Hereby Attach to any Future Act by Said Minor which is cognizable under the Juvenile Code as an act of delinquency or miscreancy, and jurisdiction of said child shall be vested in any court or appropriate jurisdiction of the County of said minor's residence or of the County wherein he may be found."

The record on the motion to suppress the confession of the appellant discloses the journal entry of September 4, 1974, was marked State's Exhibit No. 3 and used to interrogate police Detective James Parks, who was familiar with its contents. Furthermore, the appellant admitted in his testimony that he appeared in juvenile court on September 4, 1974, and was "certified as an adult on that date." Under these circumstances the appellant's contention on appeal that the journal entry was not introduced in evidence at the trial, and could not be found in the juvenile court, is at most technical, because the validity of the adjudication in the juvenile court on September 4, 1974, is not challenged in any respect, and all parties treated the Exhibit as having been admitted in evidence throughout the trial. The journal entry is fully set forth in the supplemental record on appeal.

Given the clear language of both K. S. A. 38-808 (*b*) (Weeks) and the journal entry, the appellant's contention that the district court lacked jurisdiction is without merit. No constitutional safeguards are violated by this holding. Due process is necessary for the initial adjudication. (*In re Templeton*, 202 Kan. 89, 447 P. 2d 158; *In re Stephenson & Hudson*, 204 Kan. 80, 460 P. 2d 442; and *In re Patterson, Payne & Dyer*, 210 Kan. 245, 499 P. 2d 1131.) Nothing prevents the legislature from providing that the initial adjudication, with its full due process protection, may change a juvenile's status to one allowing the juvenile to be charged as an adult for subsequent criminal acts. (See, *State v. Sherk*, supra; and Ore. Rev. Stat. 419.533[4].)

This court noted in *State v. Green*, 218 Kan. 438, 544 P. 2d 356:

". . . [T]he Kansas Legislature could, in the exercise of its wisdom, withhold the protection of the doctrine of *parens patriae* from all juveniles exceeding fifteen years of age. What the legislature may do absolutely it may do conditionally, providing the conditions prescribed are applicable in like manner to every child in the class affected. (*Correia, In re.*, 104 R. I. 251, 243 A. 2d 759 [1968]; and *West Coast Hotel Co. v. Parrish*, 300 U. S. 379, 400, 81 L. Ed. 703, 57 S. Ct. 578.)" (p. 442.)

K. S. A. 38-808 (*b*) (Weeks) providing that the juvenile court may, in its discretion, cause its finding of nonamenability to attach to any future acts committed by such child is a reasonable exercise of the legislative powers. Juveniles who have been so classified may be treated differently than other juvenile offenders. It is not for this court to usurp the legislative function or to pass judgment on the wisdom of legislative acts. (*Le Vier v. State*, supra at 292; and *State v. Sherk*, supra at 733.)

Other courts have held that a statute which gives the prosecutor discretion to charge a juvenile as an adult for certain enumerated crimes does not violate either the due process or equal protection clauses. (*United States v. Bland*, 472 F. 2d 1329 [D. C. Cir. 1972], cert. denied, 412 U. S. 909, 36 L. Ed. 2d 975, 93 S. Ct. 2294; *State v. Grayer*, 191 Neb. 523, 215 N. W. 2d 859 [1974]; and *Jackson v. State*, 311 So. 2d 658 [Miss. 1975].) Here the exercise of the prosecutor's discretion in requesting that the finding of amenability extend to future acts of the appellant, and the trial court's exercise of discretion in entering an order to extend such finding to future acts of the appellant, do not violate constitutional safeguards.

The appellant next contends the trial court erred in failing to sustain his motion to suppress his confession, and compounded the

error by admitting it into evidence, because it failed to meet due process standards of voluntariness. Our attention is first directed to *Haley v. Ohio*, 332 U. S. 596, 92 L. Ed. 224, 68 S. Ct. 302; and *Gallegos v. Colorado*, 370 U. S. 49, 8 L. Ed. 2d 325, 82 S. Ct. 1209, 87 A. L. R. 2d 614.

Admittedly, there is some language in these decisions which supports the appellant's position but that language must be considered in the context and in the light of the facts presented in those cases. In *Haley*, supra, the fifteen-year-old accused was interrogated constantly by the police for five solid hours before the excluded confession was obtained. At one point during this period, when one group of inquisitors grew tired, they were replaced by a fresh team. There was evidence that Haley had been beaten and mistreated by the police. Furthermore, a lawyer retained by Haley's mother tried to see him twice, but was refused admission by the police.

In *Gallegos*, supra, the challenged confession from a fourteen-year-old boy was not obtained until after he had been held in security detention for five days, during which time he saw no one but policemen. During this time, Gallegos' mother made repeated efforts to see him, but her requests were denied. It is clear *Haley* and *Gallegos* are not typical of the facts in the present case.

We think this case is controlled by *In re Gault*, 387 U. S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428; and *State v. Hinkle*, 206 Kan. 472, 479 P. 2d 841. The United States Supreme Court in discussing an accused juvenile's pretrial waiver of his privilege against self-incrimination said in the case of *In re Gault*, supra:

". . . If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." (p. 55.)

In *State v. Hinkle*, supra, this court considered the totality of the circumstances in determining whether a juvenile's confession was voluntary. The age of the minor is a factor to be considered in determining the voluntariness and admissibility of a juvenile's confession into evidence. (*State v. Hinkle*, supra; and authorities cited therein; and Annot., 87 A. L. R. 2d 624 [1963].) Cases holding admissible the confession of a sixteen-year-old appellant where the confession was freely and voluntarily given are numerous. (*State v. Hinkle*, supra; *State v. Francois*, 197 So. 2d 492 [Fla. 1967]; and *State v. Hardy*, 107 Ariz. 583, 491 P. 2d 17 [1971].)

The length of the questioning is also important. (*People v. Pierre*, 114 Ill. App. 2d 283, 252 N. E. 2d 706, 710 [1969], cert. denied, 400 U. S. 854, 27 L. Ed. 2d 92, 91 S. Ct. 71; *Stokley v. State of Maryland*, 301 F. Supp. 653, 659 [D. Md. 1969].) Here the record shows the appellant confessed less than an hour after he waived his *Miranda* rights.

The youth's education is also important. (*State v. Melanson*, 259 So. 2d 609, 611 [La. App. 1972]; *Stokley v. State of Maryland*, supra at 659; and *State v. Ortega*, 77 N. M. 7, 12, 419 P. 2d 219 [1966].) Nothing indicates the appellant is not of normal mental ability. (Compare *United States ex rel. Burgos v. Follette*, 448 F. 2d 130 [2nd Cir. 1971], cert. denied, 406 U. S. 950, 32 L. Ed. 2d 338, 92 S. Ct. 2043; and *Williams v. Peyton*, 404 F. 2d 528 [4th Cir. 1968].)

The appellant's prior experience with the police is relevant. (*State v. Prater*, 77 Wash. 2d 526, 463 P. 2d 640 [1970].) Many cases which have found juvenile confessions involuntary have done so because of no prior experience with police practices. (*Commonwealth v. Cain*, 361 Mass. 224, 279 N. E. 2d 706 [1972]; *Williams v. Peyton*, supra; *People v. Hildabrandt*, 244 Cal. App. 2d 423, 430, 53 Cal. Rptr. 99 [1966].) Here the appellant had previous contacts with the police as indicated by the prior waiver proceedings and by Detective Walton who mentioned several previous contacts with the appellant.

The appellant's mental state is relevant. (*People v. Hildabrandt*, supra at 430; *State v. Ortega*, supra; and see, *State v. Holloway*, 219 Kan. 245, 547 P. 2d 741.) Here the appellant testified at the time of his arrest he was under the influence of marihuana, reds and quaaludes. The police admitted the appellant told them this. At the time the police arrested the appellant Detective Walton commented he smelled a strong odor of marihuana, an odor that was objectionable to him. The appellant's eyes were red, but the pupils of his eyes were not dilated. He could walk steadily and did not appear to be out of touch with reality. Detective Walton, who had several previous contacts with the appellant, stated, "[I]f he was under the influence, it didn't impair his speech and his mentality as far as thinking and answering questions." In Detective Parks' opinion the appellant had complete control of his faculties. Detective Walton testified that no doctor was called to examine the appellant:

"Because I feel, from my experience as a policeman and being involved with people, that he was not in the condition that would merit physical, or medical treatment at the time that I interviewed him."

The testimony of police officers, who had previously known the appellant, that nothing unusual appeared in his condition is relevant in determining the voluntariness of the confession. (*Commonwealth v. Darden, Appellant*, 441 Pa. 41, 50-51, 271 A. 2d 257 [1970], cert. denied, 401 U. S. 1004, 28 L. Ed. 2d 540, 91 S. Ct. 1243.)

The appellant's confession indicated he was acting voluntarily and without threats or coercion. At the trial the appellant testified the *Miranda* form was read to him, he was asked if he understood it, he told the detectives he understood, and believed that he did understand.

The police described Michael as a little apprehensive, wily and evasive at first, but when the police told the appellant Rufus Bolden had implicated him in the robbery-murder, the appellant decided to confess. (See, *Stokley v. State of Maryland*, supra at 659 [confession after police told defendant they had a witness and the gun].) The foregoing testimony suggests the appellant's mental faculties were functioning, and that he was intelligent enough to attempt to rid himself of any responsibility through evasive tactics. The appellant's statement to the police indicated where the murder weapon could be found. (*State v. Vessel*, 260 La. 301, 256 So. 2d 96 [1971].) The appellant in reading his statement changed the address to properly reflect where the murder weapon was and initialed the change. (*State v. Smith*, 216 Kan. 265, 268, 530 P. 2d 1215; *State v. Francois*, supra at 494; and *Coney v. State*, 491 S. W. 2d 501, 505 [Mo. 1973].) The police went to the corrected address and found the murder weapon. This again indicates the appellant's mental faculties were functioning. Under the circumstances, it cannot be said the appellant's confession was the product of adolescent fantasy, fright or despair.

The appellant's use of drugs does not prevent the trial court from finding the confession to have been freely and voluntarily given. (*State v. McVeigh*, 213 Kan. 432, 435, 516 P. 2d 918; and Annot., 69 A. L. R. 2d 384 [1960].) (See also, *State v. Harden*, 206 Kan. 365, 480 P. 2d 53 [alcohol intoxication alleged]; *State v. Kimmel*, 202 Kan. 303, 448 P. 2d 19 [alcohol intoxication alleged]; *State v. Hansen*, 199 Kan. 17, 427 P. 2d 627 [lack of insulin for diabetic alleged]; and *State v. Ralls*, 216 Kan. 692, 533 P. 2d 1294 [alleged to be under the influence of tear gas].)

In *State v. Ortega,* supra, the seventeen-year-old Ortega was arrested. When taken into custody it appeared he had been drinking and, as stated by one of the officers, he was in "bad shape." Ortega stated he had taken some "yellow jacket" pills and had smoked some marihuana. However, the interrogating officers testified that Ortega appeared to be normal when the statement was taken. The court considered the totality of the circumstances and admitted the confession.

The appellant contends the trial court misconstrued K. S. A. 38-839 which provides in part:

"When any child under the age of eighteen (18) years has been taken into custody by a law enforcement official, and such child indicates *in any manner and at any stage of the process* that he wishes to consult with *an attorney* before speaking, he shall not be questioned until he has had an opportunity to consult with retained or appointed counsel. . . ." (Emphasis added.)

The appellant testified at the hearing on the motion to suppress his confession that he asked Officer Walton "could I make a telephone call to contact my attorney, which was Mr. Jim Thompson. And I asked them could I call my father because he had a telephone number, you know." According to the appellant the officers said: "No; they told me No, not until I made a statement." The appellant said he asked "about four or five times."

Police Detective James Parks testified at the hearing on the motion to suppress as follows:

"Q. And after you completed the statement with the defendant, at any time during the time that you were taking the statement do you recall the defendant asking you to call his father or requesting an attorney?

"A. Yes; yes, he did. And I informed him that he had been adjudicated as an adult and it wasn't necessary for us to call his father.

"Q. All right.

"A. However—

"Q. Did he ask for an attorney?

"A. No.

"Q. Just his father?

"A. Yes. However, I called his father and let him talk to him after obtaining the number.

"Q. Is this before or after you had conversation with him?

"A. This was afterwards."

After some inquiry by the trial court and argument of counsel the court stated:

". . . [T]here is no evidence except his uncorroborated word against the officers that he ever asked for [an] attorney. At most, he says he asked to talk to his father. . . ."

". . . I would hold, unless somebody has authority to the contrary, that once the defendant has certified as an adult, he is to be prosecuted as an adult.

"And I would find in this case that it was not necessary for his father to be there. There's really no evidence that he did ask for his father."

At the trial Detective Walton testified the appellant asked to see or talk to his father, but he did not "get his father or get in touch with his father prior to the proceeding." Detective Parks testified at the trial the appellant did not ask for an attorney at any time prior to or during the course of the statement he made. Detective Parks further testified at the trial that whether, at the time the appellant signed the waiver-of-rights form, he asked to speak to his father "it's very possible; I don't know. I advised him that he had been adjudicated and didn't have to have his dad present once he was waived as an adult."

The record discloses Jim Thompson was a court appointed attorney to represent the appellant in the district court, after the trial court found the defendant indigent. M. Thompson was relieved as court appointed counsel after trial, when M. Warren McCamish was appointed to represent the defendant on appeal. Nothing in the record shows the appellant knew Jim Thompson as an attorney when the statement was made by the appellant to the police investigating officers. It is readily apparent the trial court did not give credence to the appellant's uncorroborated testimony that he requested to call an attorney prior to making the statements in question to the police officers.

As we view the record the trial court found the appellant was fully competent, understood what he was doing when he signed the waiver-of-rights form, that he did not indicate in any manner and at any stage of the process that he wished to consult an attorney before speaking and that under the totality of the circumstances the confession was freely and voluntarily made by the appellant. Assuming the appellant asked to talk to his father prior to making any statement, as we must, the trial court ruled, in substance, that a denial of such request did not infringe upon his Fifth Amendment privilege against self-incrimination.

As we construe the Kansas Juvenile Code (K. S. A. 38-801, et seq. as amended) the provisions of 38-839, which the legislature has expressly made a part of and supplemental to the code, apply to any minor under the age of eighteen years when taken into custody by a law enforcement official. The statute is applicable even though

the minor under the age of eighteen years has previously been found to be a delinquent child not amenable to the care, treatment and training program available through the facilities of the juvenile court, and that an adjudication waiving the jurisdiction of the juvenile court was ordered to attach to any future act committed by such minor, as here.

The crucial question is whether the appellant's request to call his father, prior to interrogation by the custodial officers, "indicates in any manner" that he wished to consult an attorney or assert his right against self-incrimination—to remain silent.

The Supreme Court of California in *People v. Burton*, 6 Cal. 3d 375, 99 Cal. Rptr. 1, 491 P. 2d 793, (1971), had before it the prosecution of a minor for murder and assault with intent to commit murder. The minor was found guilty in the trial court as charged on two counts of murder in the first degree and guilty of assault. The court reversed the conviction. It held when a minor suspect is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time before or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor desires to invoke his Fifth Amendment privilege against self-incrimination. The court further held that where the minor suspect invoked his Fifth Amendment privilege by requesting to see one of his parents, a confession obtained by subsequent questioning without acceding to the request was inadmissible. It was held the admission of such confession constituted reversible error even though the subsequent interrogation was preceded by a knowing and intelligent waiver of rights after warning pursuant to *Miranda*. In the opinion the court said:

"In cases where the suspect makes no express assertion, the crucial question is what behavior is necessary to constitute an invocation of the Fifth Amendment privilege. We have stated several times that no particular form of words or conduct is necessary to constitute such an invocation. 'A suspect may indicate such a wish in many ways.' (*People v. Ireland, supra,* 70 Cal. 2d 522, 535 [75 Cal. Rptr. 188, 195, 450 P. 2d 580, 587].) 'To strictly limit the manner in which a suspect may assert the privilege, or to demand that it be invoked with unmistakable clarity (resolving any ambiguity against the defendant) would subvert *Miranda's* prophylactic intent.' (*People v. Randall, supra,* 1 Cal. 3d 948, 955 [83 Cal. Rptr. 658, 464 P. 2d 114].)

"Any words or conduct which 'reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time* [fn. omitted]' (*People v. Randall, supra,*

1 Cal. 3d 948, 956) must be held to amount to an invocation of the Fifth Amendment privilege. . . .

"In this case we are called upon to decide whether a minor's request to see his parents 'reasonably appears inconsistent with a present willingness on the part of the suspect to discuss his case freely and completely with police *at that time.*' (*People v. Randall, supra,* 1 Cal. 3d 948, 956.) It appears to us most likely and most normal that a minor who wants help on how to conduct himself with the police and wishes to indicate that he does not want to proceed without such help would express such desire by requesting to see his parents. For adults, removed from the protective ambit of parental guidance, the desire for help naturally manifests in a request for an attorney. For minors, it would seem that the desire for help naturally manifests in a request for parents. It would certainly severely restrict the 'protective devices' required by *Miranda* in cases where the suspects are minors if the only call for help which is to be deemed an invocation of the privilege is the call for an attorney. It is fatuous to assume that a minor in custody will be in a position to call an attorney for assistance and it is unrealistic to attribute no significance to his call for help from the only person to whom he normally looks—a parent or guardian. It is common knowledge that this is the normal reaction of a youthful suspect who finds himself in trouble with the law." (pp. 381, 382.)

The Missouri Court of Appeals, Kansas City district, in the case of *In re K. W. B.,* 500 S. W. 2d 275 (Mo. App. 1973), quoted with approval from the *Burton* case and held that the trial court's finding of waiver was not supported under the totality of the circumstances standard of proof. A Missouri statute (§ 211.101, R. S. Mo. 1969, V. A. M. S.) requires the presence of a parent at the trial of a juvenile. In the opinion the court said it would not be reasonably within the purposes of our juvenile law to extend to the child the special protection of parental presence at one critical stage of the juvenile process and withhold it at another. Since a juvenile who confesses at the accusatory stage had, in most instances, already had his trial, to deprive him at that stage of parental assistance would render meaningless the presence of the parent at the trial considered necessary for his protection by the statute.

For the reasons hereafter assigned and the authorities cited, which are in the majority, we decline to follow the reasoning of the California Supreme Court on the issue here presented.

The starting point for an analysis of the constitutional rights of juveniles is *In re Gault,* supra, where in 1967 the United States Supreme Court held that in juvenile delinquency proceedings minors were entitled to the benefit of certain constitutional rights previously only accorded to adults. Among these rights is the privilege against self-incrimination. Although the court expressly confined its ruling to questions concerning the rights of minors in

juvenile delinquency proceedings, the following language in the opinion is instructive:

"We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique —but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. . . ." (p. 55.)

It is apparent from the foregoing that the United States Supreme Court does not hold the presence of counsel or parents the *sine qua non* to a valid confession nor that waiver of the right to silence is impossible. Rather, the court recognizes that confessions of juveniles involve special problems that may require authorities to use different techniques from those used in connection with adult confessions, and that require courts to use the "greatest care" in assessing the validity of the confession.

The Supreme Court of Wisconsin in *Theriault v. State*, 66 Wis. 2d 33, 223 N.W. 2d 850 (1974), declined to follow the decisions from Indiana (*Lewis v. State*, 259 Ind. 431, 288 N. E. 2d 138 [1972]) and Missouri (*In re K. W. B.*, supra) that have adopted a *per se* rule concerning the validity of juvenile confessions in the absence of prior consultation with the parents. The court followed what it described to be the overwhelming weight of authority and said in the opinion:

"We think that the reasoning of the majority of the appellate courts in the cases cited above is persuasive, as against the rulings of the Indiana and Missouri courts. The receipt in evidence of a confession of a juvenile must be considered under the prevailing test of the totality of the circumstances with the absence of a parent or guardian being one factor to be considered in determining whether the confession was indeed voluntarily given." (p. 44.)

In the *Theriault* case the defendant argued that no questioning or investigation may take place until the police notify the parents or guardian, relying on a number of cases from other jurisdictions, but the court answered:

". . . The cases cited by defendant are inapposite because they involved statutes not merely requiring parental notification, but instead, affirmatively requiring police to immediately bring the minor in custody before certain juvenile or judicial authorities." (p. 46.)

The obligation of police officers under the Kansas Juvenile Code was discussed in *State v. Hinkle*, supra, and it serves as a basis for

distinguishing cases based on special juvenile code provisions in other jurisdictions.

The appellate division of the New York Supreme Court in the case of *Matter of Aaron D.*, 30 App. Div. 2d 183, 290 N. Y. S. 2d 935 (1968), held that where a child who had just reached age fifteen is taken and detained in custody by police officers, proper safeguarding of his privilege against self-incrimination suggests that he should not be questioned until he and at least one of his parents are notified of his right to remain silent and of his right to counsel, with a further notification that counsel will be appointed if they are unable to afford a defense. (Citing, Family Court Act, §§ 721-729.) In a dissenting opinion Mr. Justice Steuer said:

". . . What the Constitution interdicts is not self incrimination but involuntary self incrimination. Unfortunately the tendency to pare away the limits of what is voluntary by successive interpretations of prior interpretations has left this distinction with such a small basis that it is not astonishing that it is either not recognized or passed over lightly with a modicum of lip service. And so it is that while the rule is announced that even in the absence of counsel the confession may be admissible provided the greatest care is taken to assure that it is voluntary (*Matter of Gault, supra,* p. 55), little by little circumstances in a particular case which are held to show a lack of voluntary admission are further extended in the next one. In *Matter of William L.* (29 A D 2d 182), the boy's mother was advised by the police that the matter was not serious and she was discouraged from carrying out her original plan to accompany him. Here she was invited to attend, but this is discounted because the officer described the incident as a stabbing and not a homicide. Many years ago a distinguished jurist warned against just such a *ratio decidendi*, which he called 'a jurisprudence of conceptions' (Roscoe Pound, 'Mechanical Jurisprudence', 8 Col. L. Rev. 605, 610, quoted by CARDOZO, J., in *Hynes v. New York Cent. R. R. Co.*, 231 N. Y. 229, 235). The net result is that while voluntariness is shown by uncontested facts, involuntariness is found by quotations from prior decisions.

"When the fog of interpretive miasma is cleared away and the real question of whether this was a voluntary statement is looked into, there is no doubt at all. A reading of the statement plus the appellant's answers to the qualifying questions, which the majority gratuitously designates as a 'token compliance', explain the situation beyond cavil. Aaron D. was not only willing to explain his adventure, he was anxious to do so. He had been one of a group which killed a man, which fact, per se, made him a tiger in the jungle which his predecessors have made of our streets. He was as eager to have this known as a scholar of like age is to display a Phi Beta Kappa key. District Attorneys experienced in such fields repeatedly tell us that this and similar motives (not conscience) prompt the statements that are so frequently made. (Cf., 'Interrogations', 76 Yale L. J. 1519, 1562-1565 [1967].) To say that this statement was not voluntary is to give the word a new and tortured meaning.

"There can be little doubt that the net effect is that the appellant, nauseat-

ingly described as 'this child', will appreciate and react to this disposition by further conduct along the same lines. How else is the staggering increase in serious juvenile crime to be accounted for other than by the knowledge that no felony, however serious, is punishable? The guarantee of due process is a shield to prevent the exaction of forced incriminatory admissions, not a legal excuse for the concealment of crime." (pp. 189, 190.)

It should be noted this case appears to be confined to minors under sixteen years of age and is based on statutory rights rather than the constitution. *People v. Stephen J. B.*, 23 N. Y. 2d 611, 298 N. Y. S. 2d 489, 246 N. E. 2d 344 (1969) rejected a *per se* rule for minors not subject to the statute. (See also *Matter of William C.*, 66 Misc. 2d 804, 322 N. Y. S. 2d 410 [Family Ct. 1971].)

In *Theriault v. State*, supra, the Wisconsin Supreme Court held the confession could be used against the minor in adult criminal proceedings, where it was obtained prior to waiver of the minor by the juvenile court into adult court.

In the case at bar the jurisdiction of the juvenile court was waived prior to the commitment of the offense for which the appellant confessed.

Certainly, where a minor under the age of eighteen years requests to call his father, it would be better police practice to permit the call. But the denial of the appellant's request to call his father, prior to interrogation and a voluntary and knowing waiver of his rights pursuant to *Miranda*, violated no constitutional rights. There is no question but that the appellant was informed of his right to an attorney, but he did not ask for an attorney. On this point the finding of the trial court is binding. In *People v. Pierre*, 114 Ill. App. 2d 283, 252 N.E. 2d 706 (1969), the court said:

". . . The constitution affords no right to the presence of anyone other than a lawyer trained to protect the legal rights of those accused. While the presence or absence of a parent or responsible adult during the interrogation of a minor suspect may be a factor affecting the voluntariness of a confession, there is no constitutional right to the presence of a parent." (p. 291.)

(See also *Ezell v. State*, 489 P. 2d 781 [Okla. Crim. App. 1971].)

A juvenile is capable of making an admissible voluntary confession, and there is no requirement that he have the advice of a parent, guardian or other adult. (*Mosely v. State*, 246 Ark. 358, 438 S. W. 2d 311 [1969]; *State v. Oliver*, 160 Conn. 85, 273 A. 2d 867 [1970], cert. denied, 402 U. S. 946, 29 L. Ed. 2d 115, 91 S. Ct. 1637; *Stokley v. State of Maryland*, supra at 660; *State v. Hogan*, 297 Minn. 430, 212 N. W. 2d 664 [1973], petition for writ of mandamus and stay denied, 400 U. S. 985, 27 L. Ed. 2d 434, 91 S. Ct. 448; *Mullin v. State*, 505

P. 2d 305, 309 [Wyo. 1973], cert. denied, 414 U. S. 940, 38 L. Ed. 2d 166, 94 S. Ct. 245; *State v. Hardy,* 107 Ariz. 583, 491 P. 2d 17 [1971]; *Braziel v. State,* _____ Tenn. Crim. App. _____, 529 S. W. 2d 501 [1975]; and *Theriault v. State,* supra; and other authorities cited therein.) There is no question but that the appellant was informed of his right to remain silent, but chose not to exercise that right.

Whether a confession was freely and voluntarily given is based upon a consideration of the totality of the circumstances, and where there is a genuine conflict in the evidence great reliance must be placed upon the finder of fact. (*Andrews v. Hand,* 190 Kan. 109, 117, 372 P. 2d 559, cert. denied, 371 U. S. 880, 9 L. Ed. 2d 117, 83 S. Ct. 152; and cases cited therein; and *State v. Harden,* supra.)

Considering the totality of the circumstances, and particularly the appellant's past experience with law violation which resulted in a prior adjudication by the juvenile court waiving its jurisdiction over the appellant, we find substantial evidence to support the trial court's finding that the confession was freely and voluntarily given and admissible in evidence. (*State v. Watkins,* 219 Kan. 81, 547 P. 2d 810; and *State v. Creekmore,* 208 Kan. 933, 934, 495 P. 2d 96.)

The judgment of the lower court is affirmed.