No. 106,646

STATE OF KANSAS, *Appellee*, v. KELVIN H. GIBSON, JR., *Appellant*.

(322 P.3d 389)

Opinion filed April 18, 2014.

*Jeffrey C. Leiker*, of Leiker Law Office, P.A., of Kansas City, argued the cause, and *Michael J. Nichols*, of Michael J. Nichols, P.A., of Kansas City, was on the brief for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Kelvin H. Gibson, Jr., appeals his first-degree murder and aggravated robbery convictions, raising two issues related to the district court's determination that inculpatory statements he made to police were voluntary. First, he contends the court failed to make necessary factfindings when concluding the statements

were voluntary; and, alternatively, the record is insufficient to support that conclusion. Second, he argues structural error occurred when he was not allowed to testify in support of his motion to reconsider. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Gibson was convicted in the October 6, 2008, killing of Phillip Martin, who was found dead on his kitchen floor from multiple gunshot wounds in what appeared to be a drug-related crime. See *State v. Harris*, 297 Kan. 1076, 306 P.3d 282 (2013) (affirming convictions of Katron Harris involving the same killing).

While investigating, police learned Martin had sold drugs from his home and that Gibson may have been involved with Martin's drug transactions. Officers located Gibson, who was 17 years old at the time. He gave detectives two statements in which he implicated himself in the killings. He was charged with first-degree murder and aggravated robbery.

Before trial, the State moved for a determination as to the admissibility of Gibson's inculpatory statements to police. The district court conducted an evidentiary hearing at which Gibson had the opportunity to challenge the voluntariness of those statements. See *State v. Bogguess*, 293 Kan. 743, 751, 268 P.3d 481 (2012) (State has burden to prove defendant's statement was voluntary; truthfulness not at issue); accord *Jackson v. Denno*, 378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

At the outset of the hearing, the district court asked if Gibson intended to call any witnesses. His attorney responded in the negative. The State called only one witness, William Michael, a police detective. We draw the facts relating to Gibson's two statements primarily from Michael's testimony, except as indicated.

### The October 12, 2008, interview

The detectives located Gibson on October 12, 2008, at his home. Gibson was in the backyard. He was not a suspect at this time. The detectives identified themselves and told Gibson they were investigating Martin's killing. They asked Gibson if he would accompany them to their office to discuss his association with Martin. The

detectives knew they would have had no choice but to leave if Gibson said he did not wish to talk with them, but Gibson agreed to go.

Before they left for the station, Gibson said he was at Martin's house during the shooting. Michael testified that this statement still did not make Gibson a suspect but did make him "a very good witness." Gibson was not under arrest, was not placed in handcuffs, and the detectives did not consider him to be in custody. They went to the station in the detectives' vehicle. Michael could not recall Gibson asking whether he could contact his parents.

The detectives placed Gibson in an interview room at about 4 p.m. and began the interview at approximately 4:30 or 5 p.m. The only people in the room were Gibson and the two detectives. Gibson was not initially advised of his *Miranda* rights because he was only a possible witness, not a suspect. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966).

During the interview, Gibson admitted taking part in the shooting. He told the detectives two other individuals—"Tyree" and "D'Andre"—entered Martin's house, shot Martin, and told Gibson to shoot Martin or they would kill him too. At that point, the detectives stopped the questioning and administered the *Miranda* rights to Gibson. They did this by giving Gibson an "advice of rights" form that had the *Miranda* warnings printed on it. The detectives had Gibson read the form out loud to make sure he was a competent reader. Gibson read the *Miranda* rights, and Michael read them back to him. Michael circled the word "coercion" and explained to Gibson that it meant "force." Michael told him the detectives did not want to force him to say anything that he did not understand or without knowing what he was doing. Gibson signed the form, which was admitted as evidence at the *Jackson v. Denno* hearing.

Michael testified Gibson's demeanor did not change after he was *Mirandized*. He described Gibson as cooperative and very polite during questioning. Gibson did not appear to be under the influence of drugs or alcohol, did not slur his speech, and responded appropriately to questions. On cross-examination, Michael said

Gibson did not say he was on any kinds of drugs—a point Gibson later disputed, but not at the hearing.

Michael could not recall Gibson's age at the time of the interview, although the detective's notes reflected that he knew Gibson was 17. He also did not recall asking Gibson about his education level. But Michael testified that nothing indicated to him that Gibson was too young to understand what was happening.

The detectives later took a recorded video statement from Gibson at approximately 7:45 p.m., some 3½ hours after arriving at the police station. A transcript from that recorded statement was admitted at the hearing. That transcript was not included with the record on appeal, but the video is part of the record. It reflects that, during this interview, Gibson told the detectives he was not under the influence of drugs or alcohol but had smoked marijuana hours before the officers made contact with him at his home. Gibson also acknowledged that prior to the making of the recorded statement, he had examined computerized mug shots with the officers in an effort to identify Tyree or D'Andre and had taken breaks to smoke cigarettes.

During the entire encounter, Gibson did not ask to stop, did not ask for an attorney, and did not revoke his *Miranda* waiver. Michael testified he would have let Gibson call his parents any time during the "witness" portion of the interview, but only "in a timely fashion" during the custodial portion. Michal also testified neither detective raised his or her voice to Gibson. No physical threats, verbal threats, or promises were made. Michael did admit, though, that he might have told Gibson not to "bullshit" him.

*The October 14, 2008, interview*

After the first interview, the detectives investigated the individuals Gibson identified as Tyree and D'Andre. Tyree did not appear to be a suspect, and the detectives could not locate D'Andre. To follow up, the detectives went to the juvenile detention center where Gibson was being held. They *Mirandized* Gibson again, and Gibson signed another waiver form after the detectives went over it again with him. That form was also admitted as an exhibit at the hearing. The detectives did not make physical or verbal threats.

Gibson did not appear to be under the influence of drugs or alcohol. Michael testified the questioning was not confrontational.

The video recording made during this interview was 37 minutes long. A transcript of it was admitted into evidence at the hearing. The video was made part of the record on appeal.

### The district court ruling and further proceedings

At the *Jackson v. Denno* voluntariness/suppression hearing, after Gibson's attorney finished cross-examining Detective Michael, the district court again asked defense counsel, "[Y]ou don't have any evidence?" Gibson's attorney responded no. The State then asked the court to conclude Gibson's statements were voluntary based on what it called "undisputed" evidence. In response, Gibson's attorney conceded, "[F]rom the testimony of Detective Michael, he gave it voluntarily. I would note that he was 17, . . . I know legally he's allowed to give a statement and he . . . tells me . . . that he was very afraid."

The district court allowed both the October 12 and October 14 statements to be admitted. The judge ruled, "I can find no constitutional violations. [They] appear[] to be voluntarily and knowingly given." The district court made no additional findings of fact and did not elaborate on the reasons for its conclusions. Gibson did not request any additional findings from the court.

About 4 months after the district court's *Jackson v. Denno* ruling, Gibson's attorney moved to reconsider the suppression ruling. The motion alleged that Gibson had told Michael while making the first recorded statement that he was under the influence of marijuana and that this made the statement involuntary as he was unable to understand his *Miranda* rights. The motion further argued that the subsequent statement must be suppressed as well because it arose from the information given in the first statement. The court did not immediately schedule a hearing for consideration of this motion.

Approximately 4 months after the motion for reconsideration was filed, Gibson filed a pro se "First Amended Motion to Suppress Statement." In this document, he alleged he was only 17 when he gave the statements, he was "overly impressed and felt intimi-

dated" by the detectives, and he had told Michael he was under the influence of marijuana. He argued these things made his statements coerced and involuntary.

The morning of trial, about a month after Gibson filed his pro se motion, the court took up Gibson's motion. At first, Gibson's counsel announced that Gibson wanted counsel to "address the Court about it." Arguments by the attorneys then ensued. Defense counsel explained the basis for reconsideration was the "uncontroverted fact" that Gibson was under the influence of marijuana at the time of his first statement, was then 17 years old, very confused, and felt "overborne" by Detective Michael. The State's counsel argued those issues were dealt with and ruled on at the first hearing, so there was nothing new to be considered.

The court then inquired whether Gibson had testified at the original suppression hearing and was told he had not. The court then ruled the amended pro se motion to suppress would be denied "for the same reasons mentioned at the first prior hearing." The court then reiterated that based on the evidence at the first hearing, Gibson's statements were voluntary, defendant was not "under undue influence from any alcohol or drugs and the statement was voluntarily given not only the first time, but the second time."

Defense counsel then asked for clarification, so the district court added, "[Gibson] made appropriate answers to the questions. He didn't say anything out of context or indicate that he was in any way under the influence such that he didn't understand what was going on." The court then went on to explain that to the extent Gibson's earlier use of marijuana was conceded at the first hearing, "apparently it was not to the extent that it affected his ability to understand what was going on nor did it affect his ability to voluntarily waive his rights to incriminate himself."

Gibson's counsel then asked, "Would the Court put him under oath just to be on the record so he can put that on the record?" The court rejected the proffer, noting it had already conducted a prior *Jackson v. Denno* hearing at which Gibson was given "every opportunity to raise anything that might have affected his ability to give a fair and a voluntary and knowing statement and apparently he did not do so."

A jury convicted Gibson of first-degree murder and aggravated robbery. The district court sentenced Gibson to life imprisonment, with a minimum term of 20 years, for first-degree murder and to a consecutive 61-month prison term for aggravated robbery. Gibson's presentence investigation report revealed only two prior offenses: unscored misdemeanor convictions for failure to carry motor vehicle liability insurance.

Gibson timely appealed. Jurisdiction is proper pursuant to K.S.A. 22-3601(b)(1) (off-grid conviction; life imprisonment).

## GIBSON'S STATEMENTS WERE VOLUNTARILY GIVEN

Gibson contends, in the alternative, that (1) his case must be remanded for more detailed findings to support the district court's conclusion that Gibson's statements were voluntary or (2) the record is insufficient to sustain the district court's conclusion that his statements were voluntary and his convictions must be reversed. We hold the record is sufficient to review and conclude the district court did not err.

### Standard of Review

Given the way Gibson frames his issues, it makes sense to revisit first how the district court must proceed before going directly to what standards are applicable on appellate review.

When challenged, the prosecution must prove by a preponderance of the evidence the voluntariness of a defendant's inculpatory statement to a law enforcement officer. *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013). In determining whether a defendant's statement to a law enforcement officer was freely and voluntarily given, a trial court usually looks at the totality of the circumstances surrounding the statement and determines its voluntariness by considering the following nonexclusive factors: (1) the accused's mental condition; (2) the manner and duration of the interview; (3) the accused's ability to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the officer's fairness in conducting the interview; and (6) the accused's fluency with the English language. 297 Kan. at 326 (quoting *State v. Stone*, 291 Kan. 13, 21, 237 P.3d 1229 [2010]).

When the accused is a juvenile, Kansas courts must exercise the greatest care in assessing whether the juvenile's inculpatory statement to law enforcement was voluntary. *State v. Mays*, 277 Kan. 359, 373, 85 P.3d 1208 (2004). A juvenile's inculpatory statement must be voluntary and free from coercion or suggestion and must not be the product of ignorance of rights or adolescent fantasy, fright, or despair. *State v. Young*, 220 Kan. 541, 546, 552 P.2d 905 (1976); accord *In re Gault*, 387 U.S. 1, 55, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). In assessing the voluntariness of a juvenile's inculpatory statement to police, Kansas courts have articulated five nonexclusive factors for consideration, commonly referred to as the *Young* factors: (1) the juvenile's age; (2) the length of questioning; (3) the juvenile's education; (4) the juvenile's prior experience with police; and (5) the juvenile's mental state. *Mays*, 277 Kan. at 373; see *Young*, 220 Kan. at 546-48 (stating and discussing factors). Clearly, there is overlap among the factors articulated in a case involving a juvenile and those usually considered when the voluntariness of a defendant's statement to police is at issue; but just as clearly, our caselaw recognizes a heightened sensitivity when the accused is a juvenile.

When applying the appropriate factors to determine the voluntariness of an accused's statement to police:

" ' "[T]hese factors are not to be weighed against one another . . . , with those favorable to a free and voluntary statement offsetting those tending to the contrary. Instead, the situation surrounding the giving of a statement may dissipate the import of an individual factor that might otherwise have a coercive effect. [Citation omitted.] Even after analyzing such dilution, if any, a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances an accused's will was overborne and the inculpatory statement was not a free and voluntary act." [Citations omitted.]' " *Randolph*, 297 Kan. at 326 (quoting *State v. Sharp*, 289 Kan. 72, 81, 210 P.3d 590 [2009]).

On appeal of a trial court's determination regarding the voluntariness of a defendant's inculpatory statements, an appellate court applies a dual standard when reviewing the trial court's decision on a suppression question. First, the factual underpinnings of the decision are reviewed under a substantial competent evidence stan-

dard. Next, the appellate court reviews the trial court's legal conclusion drawn from those facts de novo. An appellate court does not reweigh evidence, assess witness credibility, or resolve conflicting evidence. *Randolph*, 297 Kan. at 326-27.

*Discussion*

Gibson first argues his convictions should be reversed, or the case remanded for additional factfinding, because the district court failed to make detailed findings when it ruled on his statements' admissibility. The State counters that Gibson failed to preserve this issue because he did not object to what he now claims are inadequate factual findings at any time during the district court proceedings. The State further argues the district court did make the necessary findings when it concluded Gibson's statements were voluntarily and knowingly given and that there was no evidence of a constitutional violation.

The State correctly points out that the duty to ensure adequate factual findings for appellate review is borne chiefly by the district court. See K.S.A. 60-252; Rule 165(a) (2013 Kan. Ct. R. Annot. 265) (district court determining contested matter must set out findings of fact and conclusions of law). But the party who seeks to raise on appeal an issue that turns on the factual determinations also bears some responsibility. See K.S.A. 60-252(b); *State v. Boleyn*, 297 Kan. 610, 630-31, 303 P.3d 680 (2013) (noting failure to object to lack of findings regarding necessary factors precluded appellate consideration of constitutional cruel or unusual punishment challenge; if necessary, defendant must file motion invoking judge's duty under Rule 165 to ensure sufficient findings for appellate argument); *cf. State v. Herbel*, 296 Kan. 1101, 1119-20, 299 P.3d 292 (2013).

Although this court has cautioned that the best practice when determining the voluntariness of a juvenile's inculpatory statements given to police is to consider on the record each of the applicable factors, that warning is invariably accompanied by a disclaimer that "[t]he district court need not explicitly consider these factors on the record." *State v. Ramos*, 271 Kan. 520, 525, 24 P.3d 95 (2001); see also *State v. Makthepharak*, 276 Kan. 563, 567, 78

P.3d 412 (2003) ("To date, we have not required that a district court expressly review the factors set out in the *Young* case on the record. We have, however, strongly suggested that the factors be considered."); *State v. Bell*, 276 Kan. 785, 796, 80 P.3d 367 (2003) (same); *State v. Davis*, 268 Kan. 661, 675-76, 998 P.2d 1127 (same), *cert. denied* 531 U.S. 855 (2000).

In Gibson's case, the trial court had before it the detective's testimony; the advice of rights forms signed by Gibson and initialed on each sentence individually setting out certain rights; transcribed copies of Gibson's video statements; and counsel's arguments. The latter included an express acknowledgement by Gibson's lawyer that "obviously—from the testimony of Detective Michael[ ], [Gibson] gave [his statements] voluntarily." And the district court also gave Gibson an opportunity to present evidence before ruling, which Gibson declined. From all of this, the court found Gibson's statements were voluntarily and knowingly given and were made without any constitutional violation. In addition, at the hearing on the motion for reconsideration, the district court noted from the evidence that Gibson was not under undue influence from alcohol or drugs, made appropriate answers to the questions posed to him by detectives, and appeared to understand what was going on during the interviews.

Based on the facts presented, the applicable factors, and our caselaw, we hold the record is sufficient for appellate review. It is evident the analysis and outcome on the voluntariness issue would not have changed even if the trial court had been more explicit about the factors it considered. See *Makthepharak*, 276 Kan. at 567.

In asking this court to consider the totality of the circumstances surrounding the October 12, 2008, interview, Gibson focuses on the following: (1) his marijuana use shortly before the initial contact with police in his backyard that made him incapable of understanding his *Miranda* waivers, *i.e.*, his mental state; (2) his age; and (3) the fact he was overly impressed and intimidated by the detectives, *i.e.*, his mental state and prior experience with police.

Gibson was 17 at the time of his interview with police. This is well above the bright-line rule set in our caselaw that has held parental

involvement is only required when the juvenile is 14 or younger. See *Ramos*, 271 Kan. at 526. The length of the first encounter at the station was about 2 hours and 45 minutes before Gibson gave his first video statement. This length of time was reasonable given the seriousness of the crime and the evidence that some of this time was used to review computerized mug shots and for cigarette breaks. *Cf. Makthepharak*, 276 Kan. at 564, 568 (5½-hour interview reasonable in light of serious charges, number of suspects, and defendant's efforts to minimize his involvement). The uncontroverted testimony was that the questioning was not confrontational and Gibson was polite and cooperative. The record also reflects Gibson had a ninth-grade education. See 276 Kan. at 563-64, 568 (statements found voluntary under totality of circumstances including that defendant had equivalent of seventh-grade education); *Ramos*, 271 Kan. at 527-28 (statements found voluntary under totality of circumstances including that defendant had equivalent of ninth-grade education).

As for Gibson's marijuana use, within the first 6 minutes of his October 12 video statement, Gibson was asked whether he was "currently" under the influence of drugs or alcohol. He responded he was not. He was then asked whether he had used any drugs or alcohol at any time that day, and he said yes. Gibson then explained that he had used marijuana about 3 hours earlier. He was then asked if that meant 3 hours before his contact with the officers at his home, and he answered in the affirmative. Those responses then prompted Detective Michael to ask whether during the time they had been together Gibson had understood the officers' questions, his answers could be recalled, and he had "control of [his] mind." Gibson responded affirmatively.

In addition, prior to Gibson mentioning his marijuana use earlier in the day, during the introductory minutes of the video Gibson had promptly and clearly stated and spelled his name; stated his birthdate, address, and phone number; identified who he lived with; read out loud his advice of rights form; responded promptly and clearly to the detective's recitation of his *Miranda* rights; confirmed he was willing to "set aside" those rights; and verified he had been treated fairly by officers, had not been threatened, and

did not feel uncomfortable. Finally, Detective Michael testified that he was familiar with people who had been under the influence of drugs or alcohol and Gibson exhibited no signs of being under such an influence.

In this case, the record provides substantial competent evidence that Gibson's statements were knowingly and voluntarily given. And our de novo review of the trial court's legal conclusions leads us to hold that Gibson's statements were voluntary. Based on the totality of circumstances, we conclude the trial court did not err in admitting Gibson's statements.

## No Error in Refusing Gibson's Testimony

Gibson next argues the district court committed structural error when it refused to allow Gibson to testify or proffer his testimony at the hearing on the pro se suppression motion to reconsider the trial court's earlier ruling that Gibson's statements to police were voluntarily given. He asks this court to hold "a defendant's right to testify on his own behalf is so basic to a fair trial that its violation constitutes structural error and requires automatic reversal." Gibson analogizes his case to *State v. Jones*, 290 Kan. 373, 382, 228 P.3d 394 (2010), in which the court held structural error occurred when a district court denied the right to self-representation to a defendant at a preliminary hearing.

### Standard of Review

To determine our standard of review we must first decide the nature of the issue before us. To be sure, it is not a question of structural error, which we have said is a rare classification. See *Jones*, 290 Kan. at 382 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]); *Boldridge v. State*, 289 Kan. 618, 627, 215 P.3d 585 (2009) ("Structural error only occurs in very limited circumstances . . . ."); see also *Fulminante*, 499 U.S. at 309-10 (describing structural errors as "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards[,]" and errors that "affect[ ] the framework within which the trial proceeds.").

Gibson's citation to *Jones* and his analogy to the right to self-representation are unavailing. The right to testify in one's own defense is limited, for example, by rules of evidence and procedure governing the conduct of criminal proceedings. See *State v. Stano*, 284 Kan. 126, 137, 159 P.3d 931 (2007) (holding defendant's exculpatory pretrial statements to police subject to exclusion at trial under hearsay rule); see also *State v. Wells*, 289 Kan. 1219, 1235, 221 P.3d 561 (2009) (" '[T]he right to present a defense is subject to statutory rules and case law interpretation of the rules of evidence and procedure.' "). And a motion to suppress does not even trigger the right to a hearing on the merits unless it alleges grounds that, if proven, would render the confession inadmissible. K.S.A. 22-3215(3).

The State correctly argues that the issue is not whether structural error was committed, but whether the district court properly refused to reconsider its prior determination that the statements were voluntary. It points out that "the decision to rehear an earlier motion is a matter which lies within the sound discretion of the trial court." *State v. Riedel*, 242 Kan. 834, 837, 752 P.2d 115 (1988) (citing *State v. Jackson*, 213 Kan. 219, Syl. ¶ 1, 515 P.2d 1108 [1973]).

In *State v. Miles*, 233 Kan. 286, 662 P.2d 1227 (1983), the court specifically addressed whether a trial court was required to rehear a motion to suppress a defendant's statement after it already considered and denied suppression based on the same facts and issues. The court held that under such circumstances "there is no requirement that the hearing be repeated." 233 Kan. at 295. Similarly, in *State v. Holmes*, 278 Kan. 603, 102 P.3d 406 (2004), the court considered whether the trial court was required to reentertain an earlier motion to suppress that had been denied. The court held: "The decision to rehear an earlier motion is a matter which lies within the sound discretion of the trial court." 278 Kan. at 620.

Whether to reopen suppression hearings to take additional evidence is similarly regarded as a discretionary function of the trial court in other state and federal jurisdictions. See, *e.g.*, *United States v. Ozuna*, 561 F.3d 728, 735 (7th Cir. 2009) (no abuse of discretion in reopening suppression hearing to consider evidence

calling into question credibility of defendant's testimony at hearing); *In re Terrorist Bombings, U.S. Embassies, E. Africa*, 552 F.3d 177, 196 (2d Cir. 2008) (reviewed for abuse of discretion trial court's decision to allow prosecution to present additional evidence of voluntariness of statements previously suppressed by trial court); *United States v. Gill*, 513 F.3d 836, 846 (8th Cir. 2008) (no abuse of discretion in refusing to reopen evidence on motion to suppress; new evidence had little probative value, and court previously heard all relevant testimony and made credibility determinations and factfindings); *People v. Patterson*, 154 Ill. 2d 414, 447-50, 610 N.E.2d 16 (1992) (no error in refusing to reopen suppression hearing for additional officer testimony; trial court's determination that further evidence would not be admitted after previously hearing testimony of less than all material witnesses that State could have called was within court's discretionary power).

We hold the issue raised by Gibson is subject to review based on an abuse of discretion standard. An abuse of discretion occurs when judicial action was (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) based on an error of law, *i.e.*, if the discretion was guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion was based. *State v. McCullough*, 293 Kan. 970, 980-81, 270 P.3d 1142 (2012).

*Discussion*

The motion to reconsider asserted that the court should reconsider because Gibson was only 17 when he gave the statements, was "overly impressed and felt intimidated by" the detectives, and had told Michael he was under the influence of marijuana. In prefacing her arguments to the court, Gibson's attorney said her client "wants me to address the Court about [his pro se motion]." She then argued briefly the points made in the motions without elaboration and without adding any new issues. It was not until the court denied Gibson's motion that the defense took a new tact and

asked, "Would the Court put [Gibson] under oath just to be on the record so he can put that on the record?"

We see no abuse of discretion. First, Gibson cites no legal authority to support the argument that he had a right to compel the district court to reopen the evidentiary record and allow him to testify in support of suppression once he had given up that opportunity at a prior hearing. See *State v. Torres*, 280 Kan. 309, 331, 121 P.3d 429 (2005) (simply pressing point without pertinent authority or without showing why it is sound despite lack of supporting authority or in the face of contrary authority akin to failing to brief point; issue deemed waived or abandoned; defendant failed to demonstrate abuse of discretion in court's denying mistrial motion and denying hearing on allegations of prosecutorial misconduct); see also *State v. Garza*, 290 Kan. 1021, 1034, 236 P.3d 501 (2010) ("Issues raised in passing that are not supported by argument or cited authority are deemed waived."). In addition, we are aware of no such authority. We have held that a defendant may testify at a *Jackson v. Denno* hearing regarding voluntariness of statement or confession without waiving his or her Fifth Amendment privilege. *State v. Bogguess*, 293 Kan. 743, 750-51, 268 P.3d 481 (2012); see *Jackson v. Denno*, 378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). But we have not held that a defendant has a right to testify regarding suppression whenever he or she sees fit after twice giving up that opportunity at a prior hearing.

Second, the fact that Gibson contemporaneously objected to the admission of his statements under K.S.A. 60-404 when the State offered them into evidence at trial does not mean a new evidentiary hearing on their admissibility was warranted. See *Miles*, 233 Kan. at 295 (repeating suppression hearing unnecessary if defendant objects to admission of confession at trial when, after *Jackson v. Denno* hearing on same facts and issues, confession already had been determined voluntary). No new issue or newly discovered evidence was offered in counsel's motion to reconsider or Gibson's pro se motion to suppress, and counsel did not argue any existed. She did not claim Gibson repudiated what he had said during his recorded statement about his earlier marijuana use, and it already

had been noted he was 17 and likely afraid and intimidated during portions of his interview. In fact, the transcript from the second hearing indicates the prospect of having Gibson testify as a proffer of that evidence was an afterthought following the district court's denial of Gibson's pro se motion, as opposed to a planned evidentiary presentation to support granting reconsideration.

But just as importantly, the uncontroverted evidence from the first hearing addressed each issue asserted in the motions for reconsideration—particularly Gibson's consumption of marijuana. Defense counsel even conceded at the first hearing that Gibson gave the statements to police voluntarily.

This is not a case in which refusal to reopen the suppression hearing actually denied Gibson the opportunity to testify. Gibson declined the opportunity in the regular course of the *Jackson v. Denno* hearing and then about 4 months later simply changed his mind. Compare *People v. Peterson*, 6 A.D.3d 363, 364, 777 N.Y.S.2d 48 (2004) (district court did not abuse discretion in refusing to allow defendant to testify at reopened suppression hearing; defendant could have testified but declined to do so at initial hearing), with *Franklin v. State*, 74 Wis. 2d 717, 720-24, 247 N.W.2d 721 (1976) (abuse of discretion to refuse to reopen suppression hearing, convened expressly to hear defendant's testimony, when defendant was 30 minutes late due to car trouble; attorney had proffered defendant's testimony in defendant's absence, which was both material and indicated defendant's desire to testify; and refusal effectively denied defendant any opportunity to testify).

Under the circumstances, a reasonable person could agree with the district court's decision to deny Gibson a second opportunity to testify and his request to proffer such testimony. We hold the district court did not abuse its discretion.

Affirmed.