NOT DESIGNATED FOR PUBLICATION

No. 113,807

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

ANGELA FLORES,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed February 12, 2016. Affirmed.

*Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Sam S. Kepfield*, of Hutchinson, for appellee.

Before GARDNER, P.J., HILL and POWELL, JJ.

POWELL, J.: The State brings this interlocutory appeal challenging the district court's suppression of Angela Flores' confession to committing arson of her own trailer. Because we find the State's brief to be so inadequate as to be virtually akin to a failure to brief the issue and because we agree with the district court's findings that Flores' confession was not voluntary, we affirm.

1

On July 7, 2014, in Hutchinson, the trailer of Angela Flores and her fiancé, Thomas Morales, Jr., caught on fire. Flores was present at the time of the fire. Early in the investigation, Flores accused Morales of setting the fire; because of this accusation, Detective Dean Harcrow of the Hutchinson Police Department requested Flores come to the police department for questioning and provide the clothes she had on the day of the fire as evidence. Flores complied and came to the police station with her mother.

The interrogation room was a small room containing a rectangular table. The door to the room contained a window and was shut during the interrogation; the door remained unlocked. Harcrow's service weapon was on his hip during the interrogation, and his badge was on display. Another officer was monitoring the interview room; however, Harcrow testified the other officer was not standing right outside the door.

Flores' videotaped interrogation began at 11:13 p.m. on the night her trailer burned down and lasted about an hour and 20 minutes with a 15-minute break. Flores received no *Miranda* warnings. Harcrow testified that Flores was initially not a suspect. During the beginning of the interrogation, Harcrow asked Flores about her relationship with Morales and what she did the day of the fire. It was revealed that Flores and Morales had an extensive history of domestic abuse. Thirty minutes into the interrogation Harcrow directly asked Flores if she started the fire. Flores started sobbing. Harcrow kept questioning her, insisting all he wanted was the truth. Crying, Flores stated, "I don't want to talk anymore." However, Harcrow continued the interrogation, stating, "You need to get everything out right now." Flores continued to cry. Harcrow then said that he was going to talk to his supervisor and asked Flores if she needed anything, to which she replied, "I want out of here now" and then chuckled. Harcrow told her that she needed to stay in the interview room while he talked to his supervisor and then left her alone for

about 15 minutes. She continued to cry through this break. During the break, Harcrow spoke with other detectives who talked with Flores' mother and neighbors.

Harcrow returned to the interrogation room and again told Flores that they needed to be honest with each other so they could "work things out." He told Flores that Morales could not have started the fire because he was with her mom at the time the fire started. Harcrow repeatedly asked Flores how the fire started. He then stated, "You aren't going to jail or anything . . . so don't worry about that." Throughout the questioning, Harcrow told Flores that he needed the truth in order to be able to get her the help she needed. The questioning continued, and Flores asked if the officers were still going to take her clothes. Harcrow answered, "We're going to do that." The questioning became more aggressive at that point, with Harcrow again asking why she started the fire. The following exchange occurred:

FLORES:     "Stop it! You're trying to trap me again so I'll get fucking arrested."
HARCROW:   "No."
FLORES:     "I don't want to go to jail."
HARCROW:   "I'm not taking you to jail."
FLORES:     "Stop it!"
HARCROW:   "I'm not taking you to jail. You're going to walk out of here tonight."

During this exchange Flores continued to sob. She then said, "Quit fooling me! If you're going to lock me up just lock me up." Harcrow again assured Flores that he was not going to arrest her and then stated, "I just want to know why, that's all I want to know, and then we can get out of here." At this point Flores confessed. She said that she was tired of being accused of cheating, being put down, and not being allowed to do anything.

Harcrow continued to ask more questions about the fire and reassured Flores that she would not be arrested as she continued to cry. Flores stated she started the fire with a

3

lighter. Harcrow again told Flores she would not be arrested then said he was going to talk to her mom and then she would get out of the interrogation room. As Harcrow left, Flores sobbed, "Let me go now! I hate being locked up in this room." At the end of the interrogation, Flores' mother entered the room with a bag of fresh clothes. Three officers entered the room and gave Flores a brown paper bag in which to put her clothes.

On July 22, 2014, Flores was charged with one count of arson. After multiple continuances, Flores filed a motion to suppress confession on March 17, 2015. After an evidentiary hearing the district court judge granted Flores' motion. In his written opinion the judge stated:

> "[T]he Court finds a reasonable person would believe their freedom was deprived during the interrogation and they were not free to leave.
>
>  . . . .
>
> "When Detective Harcrow returned for the second portion of the interrogation Miranda warnings easily could have been given to the Defendant. Instead, Detective Harcrow made a decision not to advise the Defendant of her rights. Instead, Detective Harcrow made a decision he was not going to arrest the Defendant that evening and do so on a later date believing, as is the State's position, that negated the requirement for imposition of the requirements of Miranda."

The State timely appeals.

### DID THE DISTRICT COURT ERR IN GRANTING THE MOTION TO SUPPRESS?

The standard of review of a district court's decision on a motion to suppress is a mixed standard. *State v. Morton*, 286 Kan. 632, 638, 186 P.3d 785 (2008). First, we review the district court's factual findings to determine whether they are supported by substantial competent evidence. Second, the ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual findings, we do not reweigh the evidence or

4

assess the credibility of witnesses. See *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 (2014).

> "*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), holds that the State may not use statements stemming from a custodial interrogation of a defendant unless the State demonstrates the use of procedural safeguards to secure the defendant's privilege against self-incrimination. [Citation omitted.]" *State v. Heath*, 264 Kan. 557, 590, 957 P.2d 449 (1998).

*Miranda* warnings are required for custodial interrogations but are not required for noncustodial questioning. *State v. Jacques*, 270 Kan. 173, 186, 14 P.3d 409 (2000). "An objective standard is used to judge whether an interrogation is custodial. The proper analysis is how a reasonable person in the suspect's position would have understood the situation." *State v. Fritschen*, 247 Kan. 592, Syl. ¶ 2, 802 P.2d 558 (1990). This determination must be made on a case-by-case basis. *State v. Torres*, 280 Kan. 309, Syl. ¶ 3, 121 P.3d 429 (2005). When determining if the interrogation is custodial or noncustodial,

> "[f]actors to be considered . . . include: (1) the interrogation's place and time; (2) the interrogation's duration; (3) the number of police officers present; (4) the conduct of the officers and the person subject to the interrogation; (5) the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) the status of the person being questioned as a suspect or a witness; (7) whether the person being questioned was escorted by the police to the interrogation location or arrived under his or her own power; and (8) the interrogation's result, *i.e.*, whether the person was ultimately allowed to leave, detained further, or arrested. No one factor outweighs another, nor do the factors bear equal weight. Every case must be analyzed on its own particular facts. [Citation omitted.]" *State v. Schultz*, 289 Kan. 334, 341, 212 P.3d 150 (2009).

If a defendant does not receive warnings pursuant to *Miranda* and the interrogation is held to be a noncustodial interrogation, then the evidence may be admitted. Conversely, if a defendant does not receive *Miranda* warnings and the interrogation is held to be a custodial interrogation, then the evidence must be suppressed. See *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "'"The burden of proving that a confession . . . is admissible is on the prosecution, and the required proof is by a preponderance of the evidence."'" *State v. Swanigan*, 279 Kan. 18, 23, 106 P.3d 39 (2005) (quoting *State v. Sanders*, 272 Kan. 445, 452, 33 P.3d 596 [2001], *cert. denied* 536 U.S. 963 [2002]).

Here, the State, after a perfunctory listing of the factors to consider that we have noted above, simply states: "These factors, even if established as true, do not necessarily conclusively establish that the confession was involuntary." The State's argument is shockingly sparse, especially in light of the fact that it has the burden of proof to show the confession was admissible. The State provides no argument as to how the confession was indeed voluntary. We find the State's argument so lacking as to be akin to a failure to brief the issue, tempting us to dismiss the State's appeal on this basis alone. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (issue not briefed deemed waived and abandoned); *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013) (point raised incidentally and not argued deemed abandoned).

However, in the interests of justice, we have instead conducted an independent review of the entire record and have no trouble concluding that the district court was correct in its determination that Flores' confession was involuntary. The interrogation took place late at night in a police interrogation room with other police officers nearby. During the course of the interrogation, the detective's questioning became accusatory and the detective made multiple promises to Flores that she would not be arrested. The detective also ignored Flores' multiple requests to leave and cease the interrogation.

6

Based on these facts and others in the record, a reasonable person would not have felt free to leave during this questioning; thus, this was a custodial interrogation. Because Flores did not receive any *Miranda* warnings prior to this interrogation, the district court's findings were supported by substantial competent evidence and the confession was properly suppressed.

Affirmed.