NOT DESIGNATED FOR PUBLICATION

No. 117,771

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONALD DALE BEVAN,
*Appellant*,

v.

SAM CLINE, WARDEN,
HUTCHINSON CORRECTIONAL FACILITY,

and

STATE OF KANSAS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed July 20, 2018.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellees.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Ronald Dale Bevan appeals the denial of his posttrial K.S.A. 60-
1507 motion which alleged that his trial counsel had not informed him of his right to
testify at trial and had prevented him from testifying. Our review of the record of Bevan's

1

evidentiary hearing on that motion shows sufficient evidence to support the district court's ruling; thus, we affirm.

*Factual and procedural background*

A jury convicted Bevan in 2012 of aggravated battery, involuntary manslaughter, and involuntary manslaughter while driving under the influence. The district court sentenced him to a controlling term of 186 months in prison. Bevan filed a direct appeal which unsuccessfully challenged the trial court's denials of a pretrial motion in limine and a mid-trial motion for a continuance. See *State v. Bevan*, No. 108,036, 2013 WL 3791700, at *1, *4-6 (Kan. App. 2013) (unpublished opinion).

Bevan later filed a motion pursuant to K.S.A. 60-1507. This motion alleged, among other issues, that his trial attorney, Gary Owens, had been ineffective by failing to inform him of his right to testify at trial and by preventing him from testifying. On the same day, Bevan filed a request that the district court allow him to file his 60-1507 motion out of time. The district court apparently granted that request.

The district court then conducted a full evidentiary hearing on Bevan's motion. At that hearing, Bevan chose to abandon his claim regarding Owens' failure to call certain witnesses to testify at trial and chose to focus solely on Owens' failure to inform him of his right to testify at his trial. After hearing testimony from Bevan and Owens on that issue, the district court denied Bevan relief, finding that Bevan did not carry his burden on his claim that Owens was ineffective. It later denied Bevan's motion for reconsideration and granted Bevan the right to appeal his 60-1507 decision out of time. Bevan did so.

*Did Bevan establish ineffective assistance of counsel?*

Bevan raises one issue on appeal: whether the district court's factual findings on his K.S.A. 60-1507 motion were supported by substantial competent evidence.

To be entitled to relief under K.S.A. 60-1507, the movant must establish by a preponderance of the evidence: (1) that the judgment was rendered without jurisdiction; (2) that the sentence imposed was not authorized by law or is otherwise open to collateral attack; or (3) that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. K.S.A. 2017 Supp. 60-1507(b) (grounds for relief); Supreme Court Rule 183(g) (2018 Kan. S. Ct. R. 223) (preponderance burden). Bevan argues the third element applies to this case—that his constitutional right to a fair trial was denied because he received ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

"Ineffective assistance of counsel claims—whether based on deficient performance or conflict of interest—involve mixed questions of fact and law." *State v. Cheatham*, 296 Kan. 417, 430, 292 P.3d 318 (2013). When an ineffective assistance of counsel claim is brought under K.S.A. 60-1507 and the district court conducts an evidentiary hearing, as here, we must determine whether the district court's factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. *State v. Adams*, 297 Kan. 665,

3

669, 304 P.3d 311 (2013). We are not to reweigh the evidence, assess witness credibility, or resolve conflicting evidence. *State v. Betancourt*, 301 Kan. 282, 290, 342 P.3d 916 (2015) (citing *State v. Gibson*, 299 Kan. 207, 215-16, 322 P.3d 389 [2014]).

"The benchmark for judging any claim of ineffectiveness must be whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Cheatham*, 296 Kan. 417, Syl. ¶ 3. The sphere of reasonable professional conduct is broad; therefore, judicial scrutiny of counsel's performance is highly deferential and requires consideration of all the evidence before the judge or jury. *Harris v. State*, 288 Kan. 414, 416, 204 P.3d 557 (2009). As a result, reviewing courts entertain a strong presumption that counsel's representation fell within the wide range of professional conduct, and when assessing performance, courts must "make every effort to 'eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' [Citation omitted.]" *Cheatham*, 296 Kan. at 431-32.

The district court concluded, "I cannot find that [trial counsel's] representation of Mr. Bevan was ineffective, and . . . I cannot find . . . that the results of the proceedings would have been any different than how they turned out." It thus found against Bevan on both prongs of the *Strickland* ineffective assistance of counsel test.

Our review of the record on appeal reveals substantial competent evidence supporting the district court's conclusion that Bevan's trial counsel was not ineffective.

First, Bevan informed the district court during trial that he chose not to testify:

4

"THE COURT: Okay. . . . Now, right now the Court proposes to give instruction number 18, defendant's constitutional right not to be compelled to testify, but I haven't heard from Mr. Bevan if he intends to testify or not.

"MR. OWENS: You might inquire, but my conversation with Mr. Bevan is that he will not be testifying.

"THE COURT: Okay. While we are on the record, Mr. Bevan, as you can see from instruction number 18, the proposed instruction number 18, I'm prepared to instruct the jury regarding your constitutional right not to be compelled to testify, that they cannot draw any inference of guilt from the fact that you do not testify and they are not to, and they must not consider this in arriving at a verdict. Do you have any questions from the Court regarding your, what is commonly referred to as your Fifth Amendment right against self-incrimination?

"THE DEFENDANT: No, I don't.

"THE COURT: Do you feel you have had sufficient time to discuss that with your attorney, Mr. Owens?

"THE DEFENDANT: Yes, I do.

"THE COURT: Is it your desire to exercise your right not to be compelled to testify?

"THE DEFENDANT: That is correct.

"THE COURT: The Court will so instruct the jury, as proposed in instruction number 18 then."

The record thus shows that Bevan chose not to testify.

Secondly, Owens' testimony clearly refutes Bevan's claim that Owens failed to advise Bevan of the right to testify on his own behalf. Owens testified during the evidentiary hearing on this motion that he had been a criminal defense attorney for 20 years and had tried 60 to 100 felony jury trials. He remembered assessing the facts of Bevan's case after the State rested and then advising Bevan not to testify. He believed that Bevan had already presented a defense through the State's case, and that having

5

Bevan testify would have a "very small chance of helping him any" and a "great chance of doing his case some harm." Owen stated:

"Q. Do you recall if he told you about the desire to testify?

"A. If he informed me he wanted to testify, he would have testified.

"Q. Okay. So did he ever, do you recall, did he ever tell you he wanted to testify?

"A. No. I do know there was discussion about it. I advised him against it. He ended up agreeing with my advice to him."

Owen testified that he makes a practice of consulting with his client about testifying, and that he always makes clear to his clients that whether to testify is a choice they must make.

When asked what his reasons were for thinking it would be a bad idea for Bevan to testify, Owen explained:

"A. Again, there are some general reasons and then some specific reasons.

"Q. Let's do the general.

"A. As a defense attorney, if I can get a defense on without my client testifying, I would say 99 times out of 100 that is what I would advise.

"Q. Why?

"A. In my experience, rarely does the defendant do much help when they are taking the stand. I will put or recommend a defendant take the stand if it's necessary to put on a defense. Also, in general, it's my feeling from my experience that regardless of what instructions you give a jury, regardless of what the law is, when a defendant testifies, it does affect the dynamic of a jury deliberation. It changes, in my opinion, from just arguing whether the State has proven their case beyond a reasonable doubt. The jurors start contemplating whether they believe a defendant or not, and it's always something I directly address in my closing if I have testimony on that part. In this particular case, trying to remember any details, but I remember Mr. Blevin stated—

"Q. Bev[a]n?

6

"A. Excuse me, Bevan, stated that a van or a truck had cut him off that caused the accident. That information got out during the State's case. I'm not sure what Mr. Bevan would add at that point other than a general denial. And I also believed Mr. Bevan would not come off well, just his persona and the way he carries himself with the jury. I didn't think that would go over very well.

"Q. So, you indicated that the judge had a colloquy with the defendant about whether he would testify or not?

"A. Yes. . . .

"Q. Do you recall what the defendant's answer was when the judge asked him if he wished to exercise his right not to be compelled to testify?

"A. He stated he was not going to testify.

"Q. So based upon the conversation you had with him, was it your belief that that was his choice or your choice?

"A. I believe it was his choice. As I stated, I believe that was him following my advice."

Bevan suggests that Owens' testimony was so general and that Owens' recollection was so bad that the district court should not have credited it. But cross-examination of Owens revealed his specific recollection of relevant facts:

"Q. Mr. Owens, do you have a specific recollection of informing Mr. Bevan of his right to testify?

"A. I remember sitting approximately where you are sitting. I remember his family being on the front row. I remember discussing testifying. As far as particular words or verbatim, no, I can't tell you what that was.

"Q. Is it possible then that you didn't inform him of his right to testify?

"A. I would find it highly unlikely, but in a world of infinite possibilities, sure.

"Q. Sitting here today you don't recall specifically informing him of his right to testify?

"A. I don't recall my specific words, but I do recall discussing his right to testify with him, and I do recall understanding from my conversation that he was going to follow my advice not to testify.

"Q. Where did that conversation take place?

"A. Well, we had talked about it prior to trial and, as I stated before, after the State rested I talked to Mr. Bevan in the exact location you and Mr. Bevan are right now in this courtroom.

"Q. Did you attempt at any time prior to or during trial to prepare Mr. Bevan to give testimony?

"A. We discussed testimony before. It was my belief from the beginning that he did not want to testify. We discussed generally what the testimony might be and what he would state, but as far as providing a script or anything like that to him, no.

"Q. And did you call Mr. Bevan as a witness in trial?

"A. No.

"Q. Did you put on any evidence?

"A. No.

"Q. Mr. Bevan testified that you had told him that he would be confused and the state would likely twist his words while he was on the stand. Do you recall that conversation?

"A. I don't remember saying specifically anything like that. What I would and did tell him is that he—

"Q. So you don't recall?

"A. One thing I always tell clients, one thing I know I told him is that he would be cross-examined by the State.

"Q. Right. But that wasn't my question. My question was whether you had said that specifically to Mr. Bevan.

"A. No, I didn't say that specifically to Mr. Bevan.

"Q. Okay. Isn't it true that Mr. Bevan made it clear to you that he wanted to testify?

"A. No.

"Q. And ultimately it's a criminal defendant's right to testify, if they so choose; correct?

"A. Absolutely.

"Q. And Mr. Bevan testified that he told you specifically that he wanted to testify. Is it your testimony today that that is not true?

"A. Yes.

"Q. And what do you base that on, off of? Do you have a specific memory of him saying no, I won't testify, or is that just what you believe may have happened?

8

"A. My specific memory is discussing the issue with him, whether he should testify or not. I remember advising him not to testify. I remember him agreeing with me and I remember him stating on the record to the judge that he did not want to testify."

The district court held an evidentiary hearing, heard Bevan's contradictory testimony, heard Owens' testimony, and chose to believe Owens. We cannot reweigh the evidence or assess credibility on appeal. We find ample evidence supporting the district court's finding that Owen's performance was not deficient either by not fully informing Bevan of his right to testify on his own behalf or by not allowing Bevan to make his own decision whether to exercise that right. We find it unnecessary to address the prejudice prong of the *Strickland* test. The district court properly denied Bevan's K.S.A. 60-1507 motion.

Affirmed.